Gary MOORE, Plaintiff-Appellee,

v.

The BIG PICTURE COMPANY,
Defendant-Appellant.

No. 86–2600.

United States Court of Appeals,
Fifth Circuit.

Sept. 29, 1987.

Dawn Bruner Finlayson, J. Tullos Wells, San Antonio, Tex., for defendant-appellant.

Marvin G. Pipkin, Richard G. Tate, San Antonio, Tex., for plaintiff-appellee.

Before WILLIAMS and HILL, Circuit Judges, and MENTZ[*], District Judge.

* District Judge of the Eastern District of Louisi- ana, sitting by designation.

JERRE S. WILLIAMS, Circuit Judge:

This appeal presents several issues regarding the interpretation and application of the elements of an invasion of the right of privacy cause of action. The original dispute arose when appellee Gary Moore accused appellant The Big Picture Company (Big Picture) of having invaded his right of privacy through defamation, business disparagement, tortious interference with a contract, public portrayal in a false light, and misappropriation of name in its efforts to secure an audio-visual contract at Kelly Air Force Base near San Antonio, Texas. Moore, an employee of Southwest Films (Southwest), the previous holder of the audio-visual contract, claimed that, among other things, Big Picture had made false statements about him and had placed his name on a proposed staffing chart without his permission. At trial, the district court upheld the jury's finding of liability on the issues of public portrayal in a false light and misappropriation of name. Of the five original claims, only these two are before us. We reverse on the false light cause of action, but affirm the jury's determination as to Big Picture's liability to Moore for the misappropriation of his name.

## I. Facts

Kelly Air Force Base, acting in accordance with standard procedures, requested that bids be made for the base's audio-visual contract.[1] Big Picture, which had held a number of other government contracts, submitted the lowest of five bids. Then, as the next step in the contract award process, certain government compliance officers (the Bid Examining Panel) conducted an on-site review of Big Picture at its New Jersey offices. The purpose of the visit was to gather information and to assure the government that Big Picture had the ability to perform the contract.

As part of its presentation to the Bid Examining Panel, Big Picture distributed a proposed staffing chart illustrating the number of people who would be working for Big Picture and the functions they would be performing. Appellee, Gary Moore, was included on the chart as Big Picture's media coordinator. There is some testimony that representatives from Big Picture may also have told the Bid Examining Panel that Moore had already accepted a position with the company, even though he had never spoken to anyone at Big Picture about the possibility of future employment. It was customary in the audio-visual industry, however, for the new contractor to hire at least some of the employees of the outgoing contractor in order to insure a smooth transition.

Also during the meeting with the Bid Examining Panel, Big Picture indicated that it had received certain "inside" information about the operation of Kelly Air Force Base from an employee of Southwest, the then current contractor. Moore may have been named by someone at that meeting as Big Picture's source of information. In any event, one of the members of the Bid Examining Panel, Barton Neal, notified Moore's supervisor at Southwest that Moore had been providing Big Picture with information. Moore testified that this false implication produced a strained relationship between himself and his co-workers.

Moore continued to work for Southwest until the termination of its contract with Kelly Air Force Base in February 1984. He was unable, however, to obtain other employment in the audio-visual industry after his job with Southwest was completed. He claims that this was the result of the statements made about him by Big Picture.

On October 19, 1984, Moore filed suit against Big Picture in state court alleging five separate causes of action for invasion of privacy: defamation, business disparagement, tortious interference with a contract, public portrayal in a false light, and misappropriation of name. Big Picture timely removed the action to the United States District Court for the Western District of Texas.

---

1. The company awarded the audio-visual contract at Kelly Air Force Base would be responsible for all still photography services, graphic art services, media and presentation services, and loan library work at the base.

Upon completion of discovery, Big Picture filed a motion for summary judgment as to all of Moore's claims. The district court granted partial summary judgment, dismissing Moore's defamation action as a matter of law. The case then was tried to a jury on the four remaining causes of action. At the close of appellee's case, Big Picture moved for a directed verdict on all counts. The court granted a partial directed verdict, dismissing Moore's claim of tortious interference with a contract. At the close of Big Picture's case, both sides rested. The jury found Big Picture liable to Moore on the three remaining claims and awarded him $21,000 for lost wages, $10,000 for past mental anguish, and $25,000 for exemplary damages.

Big Picture filed two post-trial motions with the court. Its motion for judgment notwithstanding the verdict asserted that Moore had failed to introduce evidence establishing the requisite elements of his three remaining causes of action, and its motion to amend the judgment claimed that the statements about appellee were subject to either an absolute or a qualified privilege. The court granted appellant's motion for judgment notwithstanding the verdict as to the business disparagement claim, but affirmed the remainder of the judgment. Big Picture filed timely notice of appeal.

## II. *Invasion of Privacy*

Big Picture contends that Moore failed to establish all the essential elements of his cause of action for invasion of privacy, and that, therefore, the district court erred in refusing to grant Big Picture's motion for judgment notwithstanding the verdict. The applicable standard for reviewing a motion for judgment n.o.v. is contained in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969).

[T]he Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could

not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied. . . .

*Id.* at 374. Therefore, we may reverse the decision of the district court only if the jury could not reasonably have reached its decision based upon the evidence presented.

Before addressing the merits of appellant's claims, a brief discussion of the complicated nature of an invasion of the right of privacy cause of action is needed. "The right of privacy has been defined as the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity." *Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex.1973). Texas courts have looked to the *Restatement (Second) of Torts* as the definitive source of guidance in cases involving invasion of the right of privacy. *Id.* at 860. *See also Gill v. Snow*, 644 S.W.2d 222 (Tex.App.—Fort Worth 1982); *Moore v. Charles B. Pierce Film Enterprises, Inc.*, 589 S.W.2d 489 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). The *Restatement* provides that:

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another ... or

(b) appropriation of the other's name or likeness ... or

(c) unreasonable publicity given to the other's private life ... or

(d) publicity that unreasonably places the other in a false light before the public. . . .

*Restatement (Second) of Torts,* § 652A (1977). The district court determined that Big Picture was liable to Moore for invasion of the right of privacy only under the second and fourth factors, misappropria-

tion of name and public portrayal in a false light. Because the analysis is different for each cause of action, we will consider them separately.

### A. Public Portrayal in a False Light

The *Restatement* describes the false light cause of action as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
>> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>>
>> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Restatement (Second) of Torts,* § 652E (1977). Big Picture claims that since there was no evidence that it gave any "publicity" to the statements allegedly made about Moore during the meeting with the Bid Examining Panel, it may not be held liable for placing Moore before the "public" in a false light. After reviewing all the relevant authorities, we hold in accordance with appellant's contentions.

We focus upon the amount of publicity required to support a false light cause of action. The *Restatement* does not contain a definition of "publicity" for use in false light claims. Section 652E, Comment a indicates only that § 652C, Comment a, regarding appropriation of a name or likeness, is applicable as to "what constitutes publicity and the publicity of application to a simple disclosure." That reference, how-

ever, is particularly unhelpful.[2] Appellant contends that, for false light purposes, the proper definition of "publicity" is contained in § 652D of the *Restatement.*[3] Section 652D, Comment a states: " 'Publicity' ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." As there are no Texas cases concerning this particular issue, we look to the law in other jurisdictions for guidance.[4]

■ The courts which have addressed this issue have almost universally adopted the definition of "publicity" contained in § 652D, Comment a of the *Restatement. See Krochalis v. Insurance Company of North America,* 629 F.Supp. 1360, 1371 (E.D.Pa.1985) ("[p]ublicity sufficient to support a cause of action for publicity given to private life or publicity placing a person in a false light is defined in the comments to [§ 652D of] the *Restatement.*"); *Bromhall v. Rorvik,* 478 F.Supp. 361, 367 (E.D.Pa. 1979) ("publicity (*i.e.,* widespread dissemination), rather than mere publication, is required" for a false light cause of action); *Brauer v. Globe Newspaper Co.,* 351 Mass. 53, 58, 217 N.E.2d 736, 740 (1966) ("an invasion of privacy based on 'publicity' which casts the plaintiff 'in a false light in the public eye' requires acts which are sufficient in themselves to familiarize the public with either the name, likeness, or other means of identifying the plaintiff."); *La Mon v. Westport,* 44 Wash.App. 664, 669, 723 P.2d 470, 474 (1986) ("[b]y definition, false light publicity requires *publicity* of the falsehood, that is, to a substantial num-

---

2. Section 652C, Comment a states that "[t]he interest protected by the rule ... is the interest of the individual in the exclusive use of his own identity, ... in so far as the use may be of benefit to him or to others."

3. Section 652D concerns publicity given to private life.

4. The Texas false light cases involve situations in which the publicity of the objectionable communications was undisputed. *See Braun v. Flynt,* 726 F.2d 245 (5th Cir.), *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984) (unauthorized picture of plaintiff published in

*Chic* magazine); *Faloona v. Hustler Magazine, Inc.,* 607 F.Supp. 1341 (N.D.Tex.1985) *aff'd,* 799 F.2d 1000 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987) (nude photographs of plaintiffs published in *Hustler* Magazine); *Gill v. Snow,* 644 S.W.2d 222 (Tex.App.—Fort Worth 1982) (allegedly false advertisement regarding plaintiff published in community newspaper); *Moore v. Charles B. Pierce Enterprises, Inc.,* 589 S.W.2d 489 (Tex.Civ. App.—Texarkana 1979, writ ref'd n.r.e.) (allegedly false presentation of plaintiff's sister in "fact-based" motion picture).

ber of people."); *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 87 (W.Va.1983) ("although widespread publicity is not necessarily required for recovery under a defamation cause of action, it is an essential ingredient to any false light invasion of privacy claim"). Since there is no reason to believe that Texas would adopt a different definition from the one favored by these courts, we determine that widespread publicity of the highly offensive matter is required before a successful false light cause of action may be established.[5]

■ With the requirement of widespread publicity established, the issue before us is whether the statements about Moore were sufficiently publicized so as to uphold the jury's finding of Big Picture's liability. The record shows clearly that the statements about Moore were not communicated to "the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Restatement (Second) of Torts*, § 652D, Comment a (1977). Only a maximum of eight persons were present at the New Jersey meeting of the Bid Examining Panel. But actually only one or two panel members were told that Moore was the source of Big Picture's "inside information." Finally, the communications, which were made during a government investigation of Big Picture, could be released only in accordance with the Freedom of Information Act, 5 U.S.C. § 552(a)(3) (1977). These restrictions negate the assumption that the matter was substantially certain to become one of public knowledge.

Moore contends that there was sufficient publicity to support a false light cause of action since the entire audio-visual industry was made aware of Big Picture's false statements. There was some testimony to the effect that at least two of Moore's prospective employers may have heard that Moore had been working with Big Picture while he was employed by Southwest. The critical point is, however, that Moore himself was almost entirely responsible for the publicity.[6] He told a number of people about the untrue communications. "For the plaintiff to recover against the defendant, however, [he] must show that the defendant caused publication of the private facts about [him]." *LaFontaine v. Family Drug Stores, Inc.*, 33 Conn.Sup. 66, 72, 360 A.2d 899, 902 (1976). There is nothing in the record to indicate that Big Picture was responsible for publicizing the statements about Moore. The mere fact that some interested parties may have heard rumors from sources other than Moore about what transpired at the meeting with the Bid Examining Panel is, without more, insufficient to meet the level of publicity required for a false light claim.

Our decision is supported by such cases as *Polin v. Dun & Bradstreet, Inc.*, 768 F.2d 1204 (10th Cir.1985) and *Wells v. Thomas*, 569 F.Supp. 426 (E.D.Pa.1983). In *Polin*, the plaintiffs brought a false light cause of action against a credit-reporting service for preparing and distributing seventeen unauthorized credit reports about them over a period of three years. The court affirmed the district court's decision to grant defendant's motion for summary judgment. It held that "[i]t is clear that the element of publicity is lacking in the instant case." *Id.* at 1206. Likewise, in *Wells*, the district court determined that

5. The district court did not specify the definition of publicity upon which it relied in denying appellant's motion for judgment notwithstanding the verdict, but merely held that "it is believed that the evidence was sufficient to support the ultimate finding of liability." The jury instructions, however, used the definition of widespread publicity contained in § 652D. While Moore objected to the instructions at trial and even raised the issue on appeal, he did not pursue the matter. He merely stated that "the proper standard for publicity is less stringent than the standard requested by Big Picture and submitted to the jury by the court." Instead, appellee's primary argument was that "even under this more stringent requirement [of § 652D], the jury determined that there was ample evidence to support a finding of publicity." Nevertheless, the issue of the proper definition of publicity is sufficiently contested to merit our discussion and adoption of the proper definition to be applied in false light cases.

6. Barton Neal also testified that he told several people that Moore was working for Big Picture and had been supplying them with inside information.

the defendant-employer's decision to disclose to other employers the terms of the plaintiff-employee's separation agreement and the reasons for her absence was not an example of public disclosure.[7] The court went on to state that "[p]laintiff's assertion that disclosures to the employees constituted publication to 'almost the entire universe of those who might have some awareness or interests in such facts,' even if assumed to be true, would not constitute 'publicity' but a mere spreading of the word by interested persons in the same way rumors are spread." *Id.* at 437.

Moore also claimed that because other employers had heard and believed Big Picture's false statements about him, he was unable to find other employment in the audio-visual industry once Southwest's contract with Kelly Air Force Base had expired. Although appellee's contentions may possess some merit, he may not rely upon a false light cause of action to provide the sought-after relief. Damage to the reputation or loss of particular employment as a result of an injurious falsehood is properly considered in a defamation or business disparagement cause of action since, unlike with false light, widespread publicity is not required.

The district court dismissed Moore's defamation claim as a matter of law, stating that "[Moore's] reputation and good nature were not attacked or injured by the statement [by Big Picture].... The use of his name was, in fact, complimentary." The court also granted appellant's motion for judgment notwithstanding the verdict on appellee's business disparagement cause of action on the ground that Moore "failed to establish an interest subject to harm other than his general reputation which is a matter of defamation previously ruled on by the Court." These claims, however, are not before us since Moore did not appeal either decision of the district court. Obviously we make no comment on the merit of such claims in this case. We mention them only to illustrate the nature of possible

remedies for the type of claim Moore asserts.

Since under the established law there was insufficient evidence of publicity to support Moore's false light cause of action, we reverse the district court's denial of judgment notwithstanding the verdict on this issue.

### B. *Misappropriation of Name*

The jury also found that Big Picture was liable to Moore for misappropriation of his name. It is well-established that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Restatement (Second) of Torts,* § 652C (1977). *See also Kimbrough v. Coca-Cola/USA,* 521 S.W.2d 719 (Tex.Civ. App.—Eastland 1975, writ ref'd n.r.e.) (recognition of cause of action for misappropriation of name under Texas law.) Although Big Picture contends that Moore failed to prove all of the necessary elements of misappropriation, we find that the evidence supports the jury's verdict finding appellant liable.

"To prove a cause of action for misappropriation, a plaintiff must show that his or her personal identity has been appropriated by the defendant for some advantage, usually of a commercial nature, to the defendant." *National Bank of Commerce v. Shaklee Corp.,* 503 F.Supp. 533, 540 (W.D. Tex.1980). The *Restatement* describes this cause of action as follows: "In order that there may be liability ..., the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Restatement (Second) of Torts,* § 652C, Comment c (1977). Appellant claims that Moore failed to establish that his name had any value or special significance to Big Picture or that Big Picture realized any commercial advantage as a result of the unauthorized use of Moore's name. Specifically, appellant contends that Moore's name was only included on the

---

**7.** *Wells,* involved a cause of action for publicity given to private life rather than public portrayal

in a false light. The standard of publicity, however, is the same in both instances.

proposed staffing chart as a symbol for someone with the same or similar qualifications and that it had no effect upon Big Picture's ability to procure the audio-visual contract at Kelly Air Force Base.

The district court, in denying appellant's motion for judgment notwithstanding the verdict, determined that there was "evidence to support a jury finding that [Big Picture] appropriated to its own benefit, the value of [Moore's] name" and that Moore "was an especially desirable individual to fill the position in question, especially in light of the fact that he may have indeed been in possession of inside information resulting from the position he held at the time." Big Picture unsuccessfully attempts to refute the court's finding by focusing exclusively on the testimony of Michael Minerva, the person at Kelly Air Force Base with final responsibility for awarding the audio-visual contract. Mr. Minerva stated that the fact that Gary Moore's name was listed on the proposed staffing chart did not make any difference at all to his decision to award the audio-visual contract to Big Picture. According to appellant, therefore, there could be no misappropriation since Big Picture did not receive any advantage as a result of the unauthorized use of Moore's name.

■ An examination of the record, however, reveals sufficient evidence to support the jury's finding as to the value of Moore's name. Michael Smith, the president of Big Picture, testified that he knew that Moore was considered to be a good worker and that Big Picture had tried to hire him. Additionally, Barton Neal, the audio-visual manager at Kelly Air Force Base, stated that Moore's name had value to him in that he was familiar with Moore's work. Their testimony, therefore, indicates that Moore's name possessed certain value within the audio-visual industry.

Mr. Neal also testified that Big Picture would not have met the contract requirements without a qualified media coordinator. While it is an overstatement of the record for Moore to claim that Big Picture would not have been awarded the audio-vis-

ual contract without the use of his name, the evidence certainly suggests that it was to appellant's advantage to have a well-known, highly qualified person listed on the proposed staffing chart. The fact that there may have been other qualified individuals who would have been acceptable candidates for the position of media coordinator is not relevant to an inquiry into the actual misappropriation of Moore's name by Big Picture. We conclude, therefore, that the jury's verdict was supported by its credibility choices, and we affirm the district court's order denying appellant's motion for judgment notwithstanding the verdict on the issue of misappropriation of name.

### III. *Damage Award*

The *Restatement* provides that

One who has established a cause of action for invasion of his privacy is entitled to recover damages for

(a) the harm to his interest in privacy resulting from the invasion;

(b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and

(c) special damage of which the invasion is a legal cause."

*Restatement (Second) of Torts*, § 652H (1977). The jury was asked to determine "what sum of money ... would fairly and reasonably compensate Gary Moore for his injuries, loss, and damages...." It found that Moore was entitled to $21,000 for lost earnings and $10,000 for past mental anguish as damages "which were proximately caused by the conduct of The Big Picture Company." The jury also awarded Moore $25,000 for exemplary damages.

Appellant contends that there is insufficient evidence to support the award of lost earnings or exemplary damages under either of the invasion of the right to privacy causes of action.[8] Since we have already determined that Moore is not entitled to recover under his false light claim, we will consider the issue of damages only as it

---

**8.** Appellant does not challenge the award of $10,000 for past mental anguish.

relates to Big Picture's misappropriation of Moore's name.

■ "For invasion of privacy through misappropriation, a plaintiff may recover general damages plus any special damages which are proven." *National Bank of Commerce v. Shaklee Corp.*, 503 F.Supp. at 545. General damages are those which naturally, proximately, and necessarily result from the improper communications. *See Bolling v. Baker*, 671 S.W.2d 559, 569 (Tex.App.—San Antonio 1984, writ dism'd w.o.j.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 64 (1985). Moore testified that, as a result of Big Picture's action at the meeting with the Bid Examining Panel, he was unable to find other employment in the audio-visual industry. The jury heard this testimony and was entitled to believe it. Additionally, in its order denying appellant's motion for judgment notwithstanding the verdict, the district court specifically found that Moore had "adequately plead [sic] and established a relationship between the offensive communications and earnings lost as a result...." We agree and affirm the jury's award of $21,000 for lost earnings.

■ A different result is mandated by the exemplary damage award. The jury was instructed that "[i]n order to find exemplary damages, you must first find that The Big Picture Company acted with malice...." Malice was defined as "ill will, bad or evil motive, or such gross indifference or reckless disregard of the rights of others as to amount to a willful or wanton act." Although appellee might have been entitled to exemplary damages if his false light claim had been successful, we find that there is insufficient evidence to support the award of $25,000 for exemplary damages under the misappropriation of name cause of action. That portion of the damage award, therefore, must be vacated.

There is no evidence in the record that Big Picture's decision to place Moore's name on the proposed staffing chart was maliciously made. The common practice of the audio-visual industry was to hire some of employees of the previous contractor. Moore even testified that he had no reason to believe that anyone at Big Picture acted with any intent to harm him. While Big Picture did not obtain Moore's permission to use his name, this action alone is insufficient evidence of malice to support an award of exemplary damages.

### IV. Appellant's Motion to Amend the Judgment

Big Picture's final contention on appeal is that the district court erred in refusing to amend the judgment to reflect that the statements regarding Moore were either absolutely or qualifiedly privileged. As appellant acknowledges, however, the application of a privilege applies only to the false light claim and has no effect upon a successful cause of action for misappropriation of name. Further discussion of the question of privilege, therefore, would serve no purpose since we determine that Big Picture's liability is based solely on misappropriation.

### V. Conclusion

The district court erred in denying appellant's motion for judgment notwithstanding the verdict on the false light cause of action. Therefore, we reverse and render on that issue. There is, however, sufficient evidence to support the jury's finding of liability for misappropriation of name, and we affirm that portion of the judgment. The damage award of $21,000 to Moore for lost earnings as a result of Big Picture's misappropriation of his name is affirmed, but the exemplary damage award of $25,000 is vacated for reason of insufficient evidence.

AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.