ALICE SCHONEWEIS, APPELLANT AND CROSS-APPELLEE, V. JOHN DANDO AND FIRST NATIONAL BANK OF BEATRICE, NEBRASKA, APPELLEES AND CROSS-APPELLANTS.

435 N. W. 2d 666

Filed February 17, 1989.   No. 87-372.

David H. Hahn for appellant.

Gregory H. Perry, of Perry, Perry, Witthoff, Guthery, Haase & Gessford, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

By her amended petition, plaintiff-appellant, Alice Schoneweis, asserts, so far as is relevant to this appeal, that the defendant-appellee John Dando and his employer, defendant-appellee First National Bank of Beatrice, a national banking association, invaded her privacy and wrongfully revealed her financial condition to others. Each of the defendants demurred under the provisions of Neb. Rev. Stat. § 25-806 (Reissue 1985) on the grounds Schoneweis' amended petition both misjoined causes of action and failed to state facts constituting any cause of action. The district court sustained the demurrers and dismissed Schoneweis' suit. She appeals, assigning error to the dismissal of her amended petition. Defendants cross-appeal, contending Schoneweis' failure to amend her original petition within the time set by the district court deprives this court of jurisdiction to entertain her appeal. For the reasons discussed hereinafter, this court has jurisdiction, and we affirm the judgment of the district court.

## I. JURISDICTION

Defendants' jurisdictional attack stems from the district court's order of November 5, 1986, which sustained their demurrers to Schoneweis' original petition and provided that if Schoneweis should fail to file an amended petition within 2 weeks, her suit would stand dismissed at her costs. Schoneweis did not file her amended petition until November 21, 1986, 2 days after the November 19, 1986, deadline purportedly imposed by the November 5 order. Defendants contend that in

granting Schoneweis leave to file her amended petition out of time, the district court abused its discretion, as the suit had been dismissed by operation of the earlier order, and the district court thus had nothing before it on which it could act.

However, as defendants recognized at oral argument before the division to which this case was originally assigned, this court has declared that conditional orders purporting to automatically dismiss an action upon a party's failure to act within a set time are void as not performing in praesenti, and thus have no force or effect. *Snell v. Snell*, 230 Neb. 764, 433 N.W.2d 200 (1988); *Building Systems, Inc. v. Medical Center, Ltd.*, 228 Neb. 168, 421 N.W.2d 773 (1988); *W & K Farms v. Hi-Line Farms*, 226 Neb. 895, 416 N.W.2d 10 (1987); *Federal Land Bank of Omaha v. Johnson*, 226 Neb. 877, 415 N.W.2d 478 (1987); *Lemburg v. Adams County*, 225 Neb. 289, 404 N.W.2d 429 (1987). Consequently, as the case was not dismissed pursuant to the court's conditional order and thus was pending before the district court when it extended the time for filing the amended petition, it did not abuse its discretion in permitting Schoneweis to do so. There is, therefore, no merit to defendants' resistance to this court's review of the district court's dismissal of Schoneweis' amended suit.

## II. ALLEGATIONS OF PETITION

Hence, we turn our attention to the relevant allegations of Schoneweis' amended petition. That document, in summary, asserts that Schoneweis had done business with First National for a number of years prior to 1985, both borrowing money from it to operate a farm with her husband and maintaining with it a depository account; that on February 21, 1985, she, pursuant to Dando's request, as he at all times acted as an agent of and on behalf of First National, signed a promissory note renewing a preexisting loan for which only her husband had been liable; that following the death of her husband shortly thereafter, Dando again asked Schoneweis to sign "new notes in order to keep the farm and the cattle" and that she, on or about April 16, 1985, signed notes which became due June 1, 1985; that although she had no discussion with Dando or other agents of First National concerning satisfaction of these notes, Dando, during the latter part of August and September of

1985, revealed the condition of Schoneweis' loans and depository account to her father, mother-in-law, and brother-in-law, falsely and recklessly indicating that the Schoneweis "farm was in trouble" and that Schoneweis "would loose [sic] everything"; that such was done in an effort to coerce Schoneweis into conveying to First National assets that it could not otherwise reach; and that as a result she was damaged in that her reputation was injured and she suffered emotional disturbance and a loss of earning capacity by (1) being placed "in a false light with her friends and family" and (2) First National's breach of its separate "duty not to disclose personal financial information" about her to third parties.

## III. DEMURRERS

We first consider whether, as claimed by the defendants' separate demurrers, Schoneweis' amended petition improperly joins causes of action contrary to the prohibition of § 25-806(5). We have characterized a cause of action as the " 'judicial protection of one's recognized right or interest, when another, owing a corresponding duty not to invade or violate such right or interest, has caused a breach of that duty.' " *Ravenna Bank v. Custom Unlimited*, 223 Neb. 540, 544, 391 N.W.2d 557, 560 (1986). Accord *First Nat. Bank of Omaha v. State*, 230 Neb. 259, 430 N.W.2d 893 (1988). We have also said that in a general sense, a cause of action is the claim or subject matter upon which suit may be maintained. In short, a cause of action consists of the fact or facts which give one the right to judicial relief. *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983). See, also, *Schuyler State Bank v. Cech*, 228 Neb. 588, 423 N.W.2d 464 (1988), which states that with respect to a demurrer, a statement of " 'facts sufficient to constitute a cause of action,' " as contemplated by § 25-806(6), means " 'a narrative of the events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff.' " 228 Neb. at 593, 423 N.W.2d at 468. Schoneweis' claims to judicial relief rest on but one body of facts, the essential feature of which is the alleged disclosure of her financial posture with First National to third persons. Thus, she seeks to recover under two legal theories which rest on that single body of facts: (1) the claimed invasion of her privacy by

the disclosure and (2) First National's breach of its claimed separate duty not to make such disclosure. Since both theories of recovery rest upon the same body of facts, Schoneweis has not misjoined causes of action.

This leaves for consideration the question of whether the facts Schoneweis has alleged constitute a cause of action at all; phrased another way, the question is whether Schoneweis has alleged the violation of at least one judicially protected right or interest. In making the analyses required to answer that question with respect to each of her theories of recovery, we are bound by the rule that when considering a demurrer, the petition is to be liberally construed; if as so construed the petition states a cause of action, the demurrer is to be overruled. *Hebard v. AT&T*, 228 Neb. 15, 421 N.W.2d 10 (1988); *Schuyler State Bank v. Cech, supra*; *Slusarski v. County of Platte*, 226 Neb. 889, 416 N.W.2d 213 (1987). See, also, *First Nat. Bank of Omaha v. State, supra*. In addition, in ruling on a demurrer challenging the sufficiency of the allegations to state a cause of action, a court is required to accept the truth of facts well pled and the factual and legal inferences which may reasonably be deduced from such facts, but does not accept the conclusions of the pleader. *Weiner v. Hazer*, 230 Neb. 53, 430 N.W.2d 269 (1988); *Hebard v. AT&T, supra*; *Schuyler State Bank v. Cech, supra*. See, also, *First Nat. Bank of Omaha v. State, supra*.

## IV. PRIVACY THEORY

### 1. Nature of Statutory Right

In *Brunson v. Ranks Army Store*, 161 Neb. 519, 73 N.W.2d 803 (1955), this court held that there existed no common-law or statutory right of action for invasion of privacy in this state. More than two decades later, the Legislature saw fit to modify the law by enacting the rights of privacy law, Neb. Rev. Stat. §§ 20-201 through 20-211 (Reissue 1987) and 25-840.01 (Reissue 1985), which defines limited rights to privacy. Section 20-204 provides:

> Any person, firm, or corporation which gives publicity to a matter concerning a natural person that places that person before the public in a false light is subject to liability for invasion of privacy, if:
> (1) The false light in which the other was placed would

be highly offensive to a reasonable person; and

(2) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Thus, the gravamen of the conduct made actionable by the foregoing statute is the giving of publicity.

In construing the almost identical Restatement provision adopted in an earlier case by the Oklahoma Supreme Court, the U.S. Court of Appeals in *Polin v. Dun & Bradstreet, Inc.*, 768 F.2d 1204 (10th Cir. 1985), concluded that the circulation of the Polins' credit report to 17 subscribers of the credit reporting service for their exclusive use was not sufficient publicity to give the Polins "a claim for false light invasion of privacy." *Id.* at 1207. In so ruling, the court relied upon the requirement of Restatement (Second) of Torts § 652D, comment *a.* (1977), that the matter be communicated " 'to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.' " 768 F.2d at 1206. The court in *Moore v. Big Picture Co.*, 828 F.2d 270 (5th Cir. 1987), agreed that widespread publicity was necessary to sustain an action for a false light invasion of privacy and noted that courts which have addressed the issue "have almost universally adopted the definition of 'publicity' contained in § 652D, Comment a of the *Restatement*." 828 F.2d at 273. The *Moore* court thus concluded that as only one or two government employees were told that the plaintiff was the source of defendant's inside information, there was not sufficient publicity to sustain a false light invasion of privacy action. Furthermore, since the communications to the government employees could be released only under the Freedom of Information Act, 5 U.S.C. § 552(a)(3) (1982), the matter was not substantially certain to become one of public knowledge. See, also, cases cited by the *Moore* court: *Krochalis v. Insurance Co. of North America*, 629 F. Supp. 1360 (E.D. Pa. 1985); *Bromhall v. Rorvik*, 478 F. Supp. 361 (E.D. Pa. 1979); *Brauer v. Globe Newspaper Co.*, 351 Mass. 53, 217 N.E.2d 736 (1966); and *LaMon v. Westport*, 44 Wash. App. 664, 723 P.2d 470 (1986).

Additionally, it is essential to a false light invasion of privacy

claim that the publicized matter be false.. See, *Machleder v. Diaz*, 801 F.2d 46 (2d Cir. 1986), *cert. denied*, *Machleder v. CBS, Inc.*, 479 U.S. 1088, 107 S. Ct. 1294, 94 L. Ed. 2d 150 (1987); *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983) ("Thus, in a false light privacy action, as in a defamation action, truth is an absolute defense"); *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761 (D.N.J. 1981); *Bisbee v. John C. Conover Agency*, 186 N.J. Super. 335, 341-42, 452 A.2d 689, 692 (1982) ("This tort form of invasion of privacy is analagous [sic] to defamation, in that the statement which gives rise to the cause of action must be untrue"); the Restatement, *supra*, § 652E, comment *a*. at 395 ("[I]t is essential to [establish false light invasion of privacy] that the matter published concerning the plaintiff is not true").

While it is true that at one point in her amended petition Schoneweis asserted that the disclosure was to her father, mother-in-law, and brother-in-law, she also averred that the disclosure placed her in a false light with her "friends and family." Giving the amended petition a liberal construction, as is required, it can be factually inferred that there was a broader publicity than only to the three named relatives. Whether the evidence would support that inference and thereby support a finding of sufficiently broad publicity is, of course, another matter. Nonetheless, the publicity allegations, coupled with the assertion that the disclosure of Schoneweis' financial condition was false and made recklessly and the inference that the false light in which she was placed would be highly offensive to a reasonable person, would be sufficient to state a cause of action under the provisions of § 20-204.

## 2. First Amendment Considerations

However, statutory analysis does not end our inquiry, for, although not addressed by the parties, it is clear that claims of damages resulting from speech present first amendment considerations. See, *Time, Inc. v. Hill*, 385 U.S. 374, 87 S. Ct. 534, 17 L. Ed. 2d 456 (1967) (a case involving publication of matters of public interest, wherein the U.S. Supreme Court incorporated the first amendment malice requirement from the law of defamation, i.e., knowledge that statements are false or in reckless disregard of the truth, into New York privacy law);

*Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 95 S. Ct. 465, 42 L. Ed. 2d 419 (1974) (applying first amendment malice requirement in false light invasion of privacy case to hold that newspaper company could constitutionally be held vicariously liable for the conduct of its agents in knowingly placing the plaintiff in a false light under state law); *Braun v. Flynt*, 726 F.2d 245, 249 (5th Cir. 1984), *reh'g denied* 731 F.2d 1205, *cert. denied*, *Chic Magazine, Inc. v. Braun*, 469 U.S. 883, 105 S. Ct. 252, 83 L. Ed. 2d 189 ("It is clear that publications alleged to constitute invasions of privacy merit the same constitutional protections as do publications alleged to be defamatory"); *Rinsley v. Brandt, supra*; *Machleder v. Diaz, supra*.

In *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987), a defamation action, we observed that *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), a case involving a magazine article about a private attorney, has been interpreted to hold that the protection which the first amendment accords to speech prevents defamation actions based on pure opinion, even when a nonmedia defendant is involved, however dishonest the publisher might be in expressing that opinion. See, also, *Letter Carriers v. Austin*, 418 U.S. 264, 94 S. Ct. 2770, 41 L. Ed. 2d 745 (1974); *J.Q. Office Equip. v. Sullivan*, 230 Neb. 397, 432 N.W.2d 211 (1988).

Following the suggestion of Restatement (Second) of Torts § 566, comment *b*. (1977), *Turner* drew a distinction between "pure opinion" and "mixed opinion." *Turner*, as does the Restatement, further noted that a pure opinion may be of two types. In one, the declarant states the facts on which the opinion is based and expresses comment as to the subject's conduct, qualifications, or character. In the other, the declarant states the opinion without stating the alleged facts on which it is based, but the parties to the communication know the facts or assume their existence, and the comment is clearly based on those facts. The mixed opinion, on the other hand, is based on facts concerning the subject or the subject's conduct, which have neither been stated by the declarant nor assumed by the parties to the communication, but the nature of the publication is such as to give rise to the inference that the declarant knows the

undisclosed facts which justify formation of the opinion. While *Turner* held that the offending statement in question in that case was true and therefore not actionable, it nonetheless observed that a pure opinion would in any event be protected by the first amendment. In *Rinsley v. Brandt,* 700 F.2d 1304 (10th Cir. 1983), the 10th Circuit Court of Appeals affirmed the granting of summary judgment to the defendants in a false light privacy action brought by a psychiatrist against several defendants, including the author of a book in part criticizing the psychiatrist's treatment methods, and held that under *Gertz, supra,* "the defense available in a defamation action that the allegedly defamatory statements are opinions, not assertions of fact, is also available in a false light privacy action." *Rinsley* at 1307.

Thus, the dispositive question as to Schoneweis' privacy theory is whether the offending statements Schoneweis attributes to defendants constitute expressions of fact or of opinion, and if the latter, whether the statements fall in the category of pure opinion or in the category of mixed opinion. Whether a statement is of fact or opinion is a question of law for the court to resolve. *Ollman v. Evans,* 750 F.2d 970 (D.C. Cir. 1984), *cert. denied* 471 U.S. 1127, 105 S. Ct. 2662, 86 L. Ed. 2d 278 (1985); *Rinsley v. Brandt, supra.* The declarations that one's farm is in trouble and that one would lose everything are expressions of pure opinion protected by the first amendment and, therefore, are not actionable under § 20-204. See *Turner v. Welliver, supra.*

## V. DISCLOSURE THEORY

Left for consideration, then, is whether First National had a separate duty not to disclose Schoneweis' financial position with it to third persons.

The only legislative pronouncement on the matter is an interesting statutory provision found in Neb. Rev. Stat. § 8-1401 (Reissue 1987), under which, absent a court order to the contrary and subject to certain exceptions not relevant to the inquiry before us, a bank may refuse to disclose information it considers to be confidential. That statute obviously does not address the situation at hand.

Although at least one court refused to find liability on the

part of a bank which disclosed its depositor's financial condition to another bank, *Irby et ux. v. Citizens Natl. Bk.*, 239 Miss. 64, 121 So. 2d 118 (1960), at least two other courts have recognized an implied contractual duty of banks not to disclose financial information concerning their customers.

In *Peterson v. Idaho First National Bank*, 83 Idaho 578, 367 P.2d 284 (1961), the bank, without its depositor's consent, disclosed the depositor's financial condition to his employer. Finding that the relationship between a bank and its depositor is one between principal and agent, the Idaho Supreme Court held:

> It is implicit in the contract of the bank with its customer or depositor that no information may be disclosed by the bank or its employees concerning the customer's or depositor's account, and that, unless authorized by law or by the customer or depositor, the bank must be held liable for breach of the implied contract.

*Id.* at 588, 367 P.2d at 290. The court also declared: "It is inconceivable that a bank would at any time consider itself at liberty to disclose the intimate details of its depositors' accounts. Inviolate secrecy is one of the inherent and fundamental precepts of the relationship of the bank and its customers or depositors." *Id.*

*Suburban Trust Co. v. Waller*, 44 Md. App. 335, 408 A.2d 758 (1979), found liability on a warranty theory. Therein, a depositor who had been given sequentially numbered $50 and $100 bills when cashing an $800 check elsewhere deposited them in a new account at the defendant bank. Considering the deposit suspicious, the bank called the police, who arrested the depositor, thinking him to have been involved in a robbery. The court of appeals concluded that a bank depositor has a right to expect that a bank "will, to the extent permitted by law, treat as confidential, all information regarding his account and any transaction relating thereto." *Id.* at 344, 408 A.2d at 764. Accordingly, the court held that "absent compulsion by law, a bank may not make any disclosures concerning a depositor's account without the express or implied consent of the depositor." *Id.*

At least three other cases have imposed liability on a tort or other theory. In *Djowharzadeh v. City Nat. Bank & Trust Co.*, 646 P.2d 616 (Okla. App. 1982), the plaintiff borrower alleged that he lost a valuable real estate investment opportunity because the bank's loan officer disclosed confidential investment information plaintiff had revealed, in applying for a loan, to the bank president's wife and the wife of the chairman of the bank's board of directors. In holding the plaintiff stated a cause of action, the court reasoned that although the relationship between the bank and its borrowers is not contractual or fiducial because a borrower is compelled to disclose information to the bank, "[t]he precarious position of the borrower and the relatively superior position of the bank mandates there be a counterbalancing special duty imposed on the part of the bank." *Id.* at 619.

In *Milohnich v. First National Bank of Miami Springs*, 224 So. 2d 759 (Fla. App. 1969), the plaintiff alleged that "the defendant bank negligently and intentionally divulged information concerning its accounts to third parties . . . and that as a result, the third parties, on three separate occasions, sued the plaintiffs and enjoined the defendant bank from distributing any of its monies on deposit in the bank . . . ." *Id.* at 760. The district court of appeal held that the "complaint alleged a cause of action for violation of an implied duty on the part of a national bank not to disclose information negligently, wilfully or maliciously or intentionally to third parties, concerning the depositor's account." *Id.* at 762. That decision was later qualified in *Barnett Bank of West Florida v. Hooper*, 498 So. 2d 923 (Fla. 1986), wherein the Supreme Court of Florida held that when the bank defends its breach of duty to disclose facts material to a transaction with a customer on the ground that it owes a conflicting duty of confidentiality to a second customer, the jury is entitled to weigh the one duty against the other.

Finally, *Graney Development Corp. v. Taksen*, 92 Misc. 2d. 764, 400 N.Y.S.2d 717 (1978), *judgment aff'd* 66 A.D.2d 1008, 411 N.Y.S.2d 756, refused to imply an agreement of confidentiality as between a borrower and his bank by noting that while a depositor may have a cause of action against his

bank for disclosure of his confidential financial information, a borrower did not. The plaintiff there alleged that the defendant told officers of another bank and an owner who intended to sell property on credit to the plaintiff that the plaintiff failed to repay a loan when due. The court held:

> As to [the] loan, the relation between the bank and the plaintiff was solely that of creditor and debtor. The information the bank imparted about the state of plaintiff's loan was not information it received in its capacity as agent for a depositor; it was information it obtained as a party to the loan agreement. It was not information that the borrower would normally expect would be kept confidential. One who defaults on his debts owed to a merchant cannot expect that his default will be kept a secret. . . . I see no basis, therefore, for implying an agreement of confidentiality to the relations of a bank with its borrowers.

*Graney, supra*, 400 N.Y.S.2d at 720.

Schoneweis' allegation that the offending statements were made in an effort to enhance First National's position as her creditor compels the conclusion that the statements related solely to that debtor-creditor relationship. We are not persuaded that under such circumstances First National owed Schoneweis any duty of confidentiality.

AFFIRMED.