**Affirm in part; Reverse and Render in part;  Opinion Filed August 18, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01763-CV

**CARDIOVASCULAR PROVIDER RESOURCES INC., Appellant**
**V.**
**CHARLES GOTTLICH M.D., Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-08894**

## MEMORANDUM OPINION

Before Justices Fillmore, Myers, and Evans
Opinion by Justice Evans

Cardiovascular Provider Resources Inc. appeals a jury verdict in favor of Charles Gottlich, M.D. on his claim for misappropriation of his name. Bringing four issues, CPR contends the evidence is legally insufficient to support the jury's findings on liability and damages. CPR further contends the trial court erred in failing to award it attorney's fees under the Texas Theft Liability Act. After reviewing the record on appeal, we agree that Gottlich presented no evidence that his name was misappropriated. We further conclude CPR was not entitled to an award of attorney's fees. Accordingly we reverse the trial court's judgment in part and render judgment that Gottlich take nothing by his claim for misappropriation. We affirm the remainder of the judgment.

## BACKGROUND FACTS

Gottlich is a retired cardiologist who practiced as a physician with Dallas Cardiology Associates doing business as "HeartPlace." The HeartPlace physicians formed Cardiovascular Provider Resources, Inc. to handle the group's administrative tasks and make investments for the benefit of participating physicians.

While Gottlich was practicing at HeartPlace and an owner/shareholder of CPR, CPR invested in Baylor Heart and Vascular Hospital, a facility at which the HeartPlace physicians would be working. BHVH is a limited liability partnership that offers partnership interests or "units" for purchase by individual physicians practicing at BHVH and entities like CPR that manage physicians practicing at BHVH. As part of making this investment, CPR signed a partnership agreement with BHVH requiring the physicians it represented to sign a non-competition agreement. The non-competition agreement stated that the signing physician was a "Qualified Physician Investor" who had not purchased BHVH partnership units individually and was choosing to allow CPR to purchase units on his behalf. Gottlich signed the non-competition agreement in November 1999.

BHVH made cash distributions to its investors on a quarterly basis based on the number of partnership units owned. Once CPR received the distribution, it would retain a certain amount to pay expenses and distribute the remainder as dividends to its shareholders. The number of BHVH units that CPR was allowed to own was determined annually and was calculated based on the number of Qualified Physician Investors it represented. The partnership agreement generally defined a "Qualified Physician" as a physician (a) licensed to practice medicine in Texas, (b) on staff at Baylor, (c) with privileges to conduct cardiology and vascular surgery procedures, that (d) has not violated federal or state health laws or been excluded from participation in Medicare or any state health care program. Every year CPR would provide BHVH with a list of its

Qualified Physician Investors. BHVH would then verify that the listed physicians met the contract requirements. Gottlich's name was included on this list from its inception.

In June 2009, Gottlich chose to redeem his shares and ownership position in CPR and HeartPlace. Although Gottlich was no longer an owner and shareholder, he continued to be employed by and work at HeartPlace. CPR continued to manage the administrative tasks associated with Gottlich's practice. Gottlich did not, however, receive any dividend income from CPR's investments. Despite this, Gottlich's name remained on the list of CPR's Qualified Physician Investors. According to CPR, it routinely listed the names of physicians who were not shareholders of CPR because its position was that a physician's association with HeartPlace was sufficient to make him a Qualified Physician Investor.

In early 2010, Gottlich began inquiring about purchasing BHVH units personally. Gottlich contacted BHVH and was told he was not eligible to purchase units individually because his name was still on the list of Qualified Physician Investors represented by CPR. Gottlich thereafter sought to have his name removed from CPR's list. CPR responded that Gottlich's name would remain on the Qualified Physician Investors list as long as he was employed by HeartPlace. Gottlich sent numerous follow-up communications to CPR seeking justification for the entity's continued use of his name. On August 27, 2010, a representative of CPR sent Gottlich an email stating that the board had unanimously decided that his name should remain on the list based on "historical precedence, continued employment at HeartPlace, and concerns regarding maintaining the collective investment mentality of HP physicians." It is undisputed that there were no BHVH units available for purchase by Gottlich during the time period that Gottlich sought to remove his name from CPR's list.

On September 3, 2010, Gottlich sent CPR a letter of resignation stating that he was resigning his position as a HeartPlace physician effective September 30, 2010. HeartPlace

responded stating that, pursuant to his employment agreement, Gottlich was required to give six months' notice. Accordingly, HeartPlace stated it would consider Gottlich's employment terminated on March 3, 2011.

On January 18, 2011, Gottlich sent a letter to HeartPlace complaining about the continued use of his name on the Qualified Physician Investors list. Gottlich noted, among other things, that although HeartPlace claimed his termination was not effective until March 3, it had already terminated his benefits, taken him off of the work schedule, and removed him from the computers. Because HeartPlace was treating him as if his employment was effectively over, he contended CPR was not entitled to continue using his name for the purposes of receiving distributions from BHVH. Gottlich then demanded to be given "an accounting and payment of all funds received from Baylor based on the use of [his] identity to justify the distributions from the Hospital to CPR."

On February 9, 2011 HeartPlace sent Gottlich a letter informing him that "in contemplation of the formal termination of [his] association with HeartPlace," it would "start the process" of removing him from the list of qualified physicians. Gottlich's name was eventually removed from the list and replaced with the name of another HeartPlace physician.

Gottlich filed this suit alleging claims against HeartPlace and CPR for conversion, violations of the Texas Theft Liability Act (TTLA), unjust enrichment, money had and received, breach of contract, and declaratory judgment. In his second amended petition, Gottlich added a claim for misappropriation of his name. Four months later, Gottlich filed a notice of non-suit without prejudice to refiling as to his claims for conversion, violations of the TTLA, and declaratory relief.

The case was called to trial before a jury on August 19, 2013. After Gottlich rested his case, CPR and HeartPlace moved for a directed verdict. At that point, Gottlich announced he

–4–

was non-suiting his claims against HeartPlace with prejudice.  The trial court denied the motion for directed verdict and signed a separate order granting the non-suit.  After hearing the evidence, the jury was asked whether CPR misappropriated Gottlich's name for its own use or benefit.  The jury responded "yes" and awarded Gottlich $306,435.12 in damages.  The jury was also asked whether CPR was unjustly enriched through the receipt of BHVH distributions.  Although the jury answered "yes" to this question, it did not award Gottlich any damages for this claim.  Finally, the jury was asked whether CPR received BHVH distributions that, "in equity and good conscience, belong to Dr. Gottlich."  The jury responded "no."  No question was submitted to the jury on Gottlich's claim for breach of contract.

CPR filed a motion for judgment notwithstanding the verdict arguing that Gottlich failed to establish a claim for misappropriation of his name and failed to prove he was entitled to damages.  The trial court signed a final judgment in favor of Gottlich effectively denying CPR's motion.  CPR then filed a second motion for judgment notwithstanding the verdict and, alternatively, for new trial arguing, again, that Gottlich failed to establish the elements of his claim for misappropriation of his name.  In addition, CPR filed a motion to correct the final judgment to eliminate recitals it claimed contradicted the record, modify the award of prejudgment interest, and award CPR attorney's fees pursuant to the TTLA and Uniform Declaratory Judgments Act.  On November 27, 2013, the trial court signed an amended final judgment removing the recitals and amending the award of prejudgment interest.  The court denied CPR's request for attorney's fees.  CPR then brought this appeal.

**ANALYSIS**

**I. Misappropriation of Name**

In its first issue, CPR contends the evidence is legally insufficient to support a finding that it misappropriated Gottlich's name.  In reviewing the legal sufficiency of the evidence, we

credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 770 (Tex. 2010) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822, 827 (Tex. 2005)). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Haggar Clothing Co. v. Hernandez,* 164 S.W.3d 386, 388 (Tex. 2005) (per curiam); *see also City of Keller,* 168 S.W.3d at 810. The final test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller,* 168 S.W.3d at 827.

The three elements of a misappropriation claim under Texas law are (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *See Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994). Name misappropriation is a species of invasion of privacy, and Texas law applies a very restrictive interpretation of the tort. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007). For liability to arise, "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *See Moore v. Big Picture Co.*, 828 F.2d 270, 275 (5th Cir. 1987) (citing RESTATEMENT (SECOND) OF TORTS § 652C, cmt. c (1977)). There must be something "unique" about the plaintiff's name or likeness that creates value which may be appropriated. *See Matthews*, 15 F.3d at 437. Tort liability is intended to protect the value of the individual's notoriety or skill and not the just name *per se*. *Id*. This value is protected by limiting the things with which the plaintiff's reputation, goodwill, commercial standing, and the like are associated, thereby preventing excessive exploitation. *Id*.

at 437–38. Excessive exploitation is use which reduces the value of the plaintiff's property rights in his name. *See Meadows*, 492 F.3d at 639.

CPR contends there is no evidence to show that its use of Gottlich's name on its investor list had anything to do with seeking or deriving a benefit from Gottlich's reputation, prestige, notoriety or skill and, therefore, there is no evidence to support a claim for name misappropriation. We agree. Nothing about Gottlich's inclusion on the list had anything to do with his unique skills or reputation as a physician. Gottlich argues that CPR used his name because he had the necessary credentials to be a "Qualified Physician Investor" under the BHVH partnership agreement including a license to practice medicine in Texas and privileges to perform cardiac and vascular surgery at Baylor Hospital. Gottlich attempts to equate these credentials with his skills, reputation, and commercial standing in the medical field. Gottlich's credentials for purposes of the list were not unique to him, however, and were not used by CPR in a way that implicated his individual abilities. As Gottlich concedes, he was merely a member of a pool of physicians with identical qualifications. Indeed, when Gottlich's name was removed from the investor list, it was replaced with that of another physician with no impact on CPR's investment. Gottlich failed to provide any evidence that his name specifically had a unique value that was misappropriated and diluted by CPR.

Gottlich relies heavily on the case of *Moore v. Big Picture Co.* 828 F.2d 270 (5th Cir. 1987) to support his position that CPR's actions constituted misappropriation. But the evidence presented in *Moore* is exactly the type of evidence necessary to show misappropriation that is absent in this case. In *Moore*, the defendant, Big Picture, put together a presentation and bid package in an effort to be awarded a government audio-visual contract. *Id.* at 271. As part of the bid package, Big Picture included a proposed staffing chart which named the plaintiff as the media coordinator. *Id.* The plaintiff, who was not an employee of Big Picture, contended his

name was placed on the staffing chart without his permission. *Id*. In challenging the jury's finding that it misappropriated the plaintiff's name, Big Picture contended that "[the plaintiff's] name was only included on the proposed staffing chart as a symbol for someone with the same or similar qualifications" and that the name's inclusion had no effect on Big Picture's ability to procure the contract. *Id*. at 275–76. But in reviewing the record, the court determined there was sufficient evidence to support the jury's finding that the plaintiff's name in particular had value and was not a mere "place holder" on the staffing chart. *Id*. at 276. The trial court specifically noted when it denied Big Picture's motion for judgment notwithstanding the verdict that the evidence showed the plaintiff was "an especially desirable individual to fill the position in question." *Id*. Furthermore, there was testimony to show the plaintiff was known to be a good worker and the audio-visual manager with the governmental entity receiving the bids stated he was familiar with the plaintiff's work and the plaintiff's name had value to him." *Id*.

In contrast, Gottlich points to no evidence that his name had any unique value or was used as anything more than "a symbol for someone with the same or similar qualifications." This is demonstrated by the fact that his name was eventually replaced with that of another doctor with no effect on CPR's investment in BHVH. Gottlich conceded at trial that CPR did not try to exploit any notoriety or "fame" associated with his name.

The damages sought by Gottlich and awarded by the jury further show that Gottlich did not claim, let alone prove, that CPR appropriated for its own benefit anything that was unique to his name. The list of Qualified Physician Investors included twenty-two physician names. Gottlich calculated his damages as 1/22 of the total amount of distributions CPR received during the time it allegedly made unauthorized use of his name. Accordingly, Gottlich's name possessed no unique value for purposes of the list; it was fungible with every other name on it.

Gottlich presented no evidence of any diminution or dilution in the property value of his name caused by CPR's use nor did he make any showing that his privacy was violated.

Gottlich discusses at length his position that CPR's use of his name after he was no longer a shareholder was a violation of the terms of the partnership agreement with BHVH. Even assuming CPR did not comply with the partnership agreement – a contract to which Gottlich was not a party – this has no bearing on whether his name was used for the unique value associated with it, a necessary element to recover for misappropriation of one's name.

Based on the foregoing, we conclude Gottlich presented no evidence that CPR misappropriated Gottlich's name for the value associated with it. The trial court erred, therefore, in denying CPR's motion for judgment notwithstanding the verdict. We resolve CPR's first issue in its favor.

## II. Attorney's Fees

In its second and third issues, CPR contends the trial court erred in failing to award it reasonable and necessary attorney's fees as the prevailing party under the TTLA.[1] CPR contends the trial court's final judgment denying all relief not otherwise determined amounted to a take-nothing judgment against Gottlich on the TTLA claim entitling CPR to an award of fees and costs limited to those incurred in defending against that claim. CPR acknowledges that Gottlich filed a notice of nonsuit without prejudice on his claim under the TTLA. CPR contends, however, that because the trial court did not sign an order granting the nonsuit, it was not until the final judgment was signed that the TTLA claim was disposed of on the merits and CPR became the prevailing party as to that claim.

---

[1] CPR does not challenge the trial court's failure to award it attorney's fees under the Uniform Declaratory Judgments Act.

CPR's argument is without merit. In Texas, a plaintiff may nonsuit at any time before introducing all of his evidence other than rebuttal evidence. *See Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). No court order is required for the nonsuit to be effective. *Id.*

A defendant may still be entitled to receive attorney's fees as a "person who prevails" under the TTLA following voluntarily nonsuit of the claim against him without prejudice if the trial court determines, upon motion of the defendant, that the nonsuit was taken to avoid an unfavorable ruling on the merits. *See BBP SubI LP v. Di Tucci*, No. 05-12-01523-CV, 2014 WL 3743669, at *4 (Tex. App.—Dallas July 29, 2014, no pet.) (mem. op.). CPR requested attorney's fees under the TTLA in its live pleading and the trial court's judgment denied this request. CPR did not file its motion seeking to recover its fees under the TTLA until after the judgment denying it an award of fees was rendered. Accordingly, we construe CPR's motion seeking an award of attorney's fees as a motion to modify the judgment or, alternatively, as a motion for new trial. *See Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (we look to substance of motion to determine relief sought not merely its title). Both the denial of a motion to modify and the denial of a motion for new trial are reviewed for an abuse of discretion. *See Wagner v. Edlund*, 229 S.W.3d 870, 879 (Tex. App.—Dallas 2007, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or if it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

To be entitled to attorney's fees, CPR was required to file a motion demonstrating that Gottlich nonsuited his TTLA claim to avoid an unfavorable ruling on the merits. *See Epps*, 351 S.W.3d at 870. Because no such motion was filed before the initial judgment was rendered, the trial court did not err in denying CPR's request for fees in its initial judgment. CPR contends, and Gottlich does not dispute, that the parties agreed to submit the issue of attorney's fees to the

trial court post-verdict.  This agreement cannot be read, however, to permit CPR to file its motion post-*judgment*.  CPR contends it could not file its motion until after judgment was rendered because it was not until the first judgment was signed that the TTLA claim was finally disposed of.  As discussed above, however, this is not the case.  Gottlich's TTLA claim was disposed of for purposes of this suit when his notice of nonsuit was filed.  *Id*. at 868.

Gottlich's notice of nonsuit of his claim under the TTLA was filed nine months before trial began in this case.  CPR makes no showing as to why it could not file the required motion seeking its attorney's fees before judgment was rendered.  Because there was no motion prior to the initial judgment, the trial court's denial of CPR's request for fees in the initial judgment was not error requiring correction.  Accordingly, we conclude the trial court did not abuse its discretion in denying CPR's motion to modify the initial judgment and motion for new trial on the attorney's fees issue.  We resolve CPR's second and third issues against it.

Because of our resolution of CPR's first, second and third issues, it is unnecessary for us to address CPR's remaining issue and arguments.  We reverse the trial court's judgment in part and render judgment that Gottlich take nothing by his claim for misappropriation.  We affirm the remainder of the judgment.

/David W. Evans/
DAVID EVANS
JUSTICE

131763F.P05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CARDIOVASCULAR PROVIDER
RESOURCES INC., Appellant

No. 05-13-01763-CV     V.

CHARLES GOTTLICH M.D., Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-08894.
Opinion delivered by Justice Evans. Justices
Fillmore and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding Charles Gottlich M.D. damages for his claim for misappropriation and **RENDER** judgment that he take nothing by that claim. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 18th day of August, 2015.