Larry DERRYBERRY, Attorney General of the State of Oklahoma, Appellant,

v.

.RETAIL CREDIT COMPANY, a corporation, Appellee.

RETAIL CREDIT COMPANY, a corporation, Appellant,

v.

Larry DERRYBERRY, Attorney General of the State of Oklahoma, Appellee.

Nos. 45829 and 45837.

Supreme Court of Oklahoma.

May 11, 1976.

Larry Derryberry, Atty. Gen., of Oklahoma, Todd W. Markum, Asst. Atty. Gen., for appellant (Attorney General of Oklahoma).

Ben L. Burdick, Andrew M. Coats, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, E. J. Doerner, William C. Anderson, Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, for appellee (Retail Credit Co.).

Charles A. Whitebook, Whitebook, Knox, Holtz & Harlin, Tulsa, for amicus curiae (Oklahoma AFL-CIO).

IRWIN, Justice:

Retail Credit Company (plaintiff) publishes and furnishes financial data and reports to numerous clients, including reports on applicants for various types of insurance coverage and for extension of credit. Plaintiff received a letter from the office of the Attorney General (State) setting forth State's interpretation of 24 O.S.1971, §§ 81 and 82, and State's intention to enforce compliance therewith. Plaintiff commenced proceedings against State seeking a declaratory judgment that its business activities and reporting services did not fall within the purview of the above statutes.

Section 81, provides:

"Any person, firm or corporation engaged in or purporting to furnish retail merchants the financial or credit rating of any person who is the actual or prospective customer of such retail merchant shall, before furnishing such rating, submit, either in person or by mail to his last known postoffice address to the person whose rating is about to be reported, a request asking for a statement of the assets and liabilities of such person."

Section 82, provides:

"Whenever an opinion in writing upon the financial or credit standing of any person is about to be submitted for the purpose of establishing a financial or credit rating of customers, to be used by the retail business concerns, the person, firm or corporation submitting such opinion shall first mail a copy of such opinion to the person about whom the opinion is given, at his proper postoffice address."

Extensive testimonial and documentary evidence was admitted at the trial and the parties submitted briefs. The trial court in a memorandum opinion ruled that plaintiff's activities relating to reports on applicants for various types of insurance coverage did not come within the purview of §§ 81 and 82, supra, but plaintiff's activities pertaining to applicants for the extention of credit were squarely within the intent and meaning of the statutory provisions.

State appealed that part of the judgment holding that reports relating to insurance coverage were not within the purview of the statutes in Case No. 45,829; and plaintiff appealed that part of the judgment holding that its reports relating to extension of credit were within the terms of the statutes in Case No. 45,837. The appeals have been consolidated under the surviving No. 45,829.

Plaintiff states that approximately 90% of its business in Oklahoma involves investigation and reports submitted to insurance companies for the sole and exclusive purpose of evaluating, in the underwriting process, an applicant for insurance as an insurance risk; and its reports to insurance companies are not in any way used in a credit transaction for the purpose of evaluating the subject of the report for the purpose of extending credit to him as a customer.

Generally speaking, plaintiff's reports contain information on the subject's income, net worth, indebtedness and/or history of paying obligations. The information is gathered by means of examining public records (i. e. chattel filings, judgment roles and tax lien filings), and by interviews with employers, local merchants, neighbors and friends. The raw data is

reduced to a written report intended to supply the client with the information needed to make the desired business decision.

Although there is a conscious effort by plaintiff to make its reports objective and to limit the information to purely factual data, some of the most important information furnished its clients must of necessity be the result of the investigator speculative and subjective evaluation. The reports do not attempt to "rate" a person, leaving that to be determined by the client after evaluation of the report. However, to the extent that the subjective evaluations of the investigator may compel a certain result when examined by the client, i. e. a report that the subject has a poor history of paying debts might automatically preclude an extension of credit, the reports have a definite impact on how the subject is rated by the client.

Plaintiff contended throughout the trial that insurance companies used the reports for no other purpose than to evaluate their potential risk of loss and the risk evaluation process was not within the contemplation of the statutes.

The trial court determined that by using certain language in *Polin v. Retail Credit Company*, Okl., 469 P.2d 1004 (1970), this Court was of the opinion that § 82, supra, contemplates the furnishing of financial reports for the purpose of determining whether the subject should be extended credit as a customer. The trial court found that applicants for insurance coverage are not seeking the extension of credit and that §§ 81 and 82, supra, are not applicable when the reports are used to evaluate a person for reasons other than the extension of credit. Thus, the trial court concluded plaintiff's reports submitted to insurance underwriting customers to be used to evaluate the risk involved in providing insurance coverage are not subject to the requirements of the statutes. The language in *Polin* cited by the trial court is:

"Although the alternative writ does not specifically allege plaintiff was a customer or prospective customer of a retail business concern who was furnished a financial or credit report, *there is a reasonable inference from the language that they were furnished these financial opinions for the purpose of extending him credit as a customer. There is no suggestion or inference that plaintiff was seeking a job and that these retail businesses were prospective employers, but on the contrary, the language in the writ suggests and infers that the business concerns were furnished financial opinions about plaintiff for the purpose of evaluating him as a customer.*" (emphasis added by the trial court)

The purpose of the entire statutory scheme [24 O.S.1971, §§ 81 through 85] is to protect the individual from injury to his financial or credit standing resulting from false or misleading ratings and written opinions. The statutory scheme is keyed to how the written opinion is to be used. The mere existence of the written opinion does not by itself obligate the authoring agency to supply the investigated individual with a copy. We noted in *Polin*, written opinions submitted for the purpose of evaluating an individual for prospective employment do not come within the contemplation of § 82.

As stated in *Polin*, "Section 82 applies to those 'opinions in writing' that are submitted to a retail business concern for the purpose of establishing a financial or credit rating of a particular customer. In such instances the statute requires that the customer be mailed a copy of the opinion." The reports submitted by plaintiff involving applicants for insurance coverage and "used by insurance underwriters exclusively for evaluating the subject as an insurance risk" simply do not come within the purview of § 82, supra. The portion of the trial court's judgment relating thereto (appealed in Case No. 45,829) is affirmed.

Plaintiff contends (in its appeal in Case No. 45,837) that its reports pertaining to applicants for the extension of credit are not "opinions" and do not constitute "fi-

nancial or credit ratings" within the meaning of §§ 81 and 82, supra. Plaintiff argues the opinion information contained in those reports is "nothing more than impressions gained from the facts and opinions of those interviewed"; and that it merely provides the information from which the client decides what rating to give the customer.

The trial court found that the type of information plaintiff sought to have its investigators gather was so subjective as to require the investigators to venture a personal opinion on certain facts. The trial court's finding is well taken.

■ Plaintiff's own forms require its investigators to "estimate NET WORTH", to state whether the subject's "general reputation" is good, to comment on "Lack of stability", and to "amplify" unusual information about domestic difficulties or illness which might affect subject's ability to earn or pay. Even a yes or no answer to some questions necessitates a critical evaluation of random data and the drawing of inferences from that data. The reports pertaining to applicants for the extension of credit clearly constitute "opinions in writing."

■ Plaintiff's contention that its reports are not "financial or credit ratings" even if true does not remove its activities from the operation of the statute. The terms of § 82, supra, in no way require that the "opinion in writing" be a financial or credit rating, merely that it is "for the purpose of establishing a financial or credit rating of customers, to be used by the retail business concerns, . . ." No matter who is responsible for the ultimate "rating", plaintiff's reports are the primary source material from which the financial or credit rating is derived, and as such comes within the purview of § 82, supra.

Judgment affirmed in both appeals.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, BERRY, LAVENDER, BARNES and DOOLIN, JJ., concur.

SIMMS, J., concurs in case No. 45,837; dissents in case No. 45829.