**Paul Wm. POLIN and Marsha Polin,<br>Plaintiffs-Appellants,**

v.

**DUN & BRADSTREET, INC., a<br>Delaware corporation,<br>Defendant-Appellee.**

**No. 83–1952.**

United States Court of Appeals,<br>Tenth Circuit.

July 29, 1985.

Don E. Gasaway, Gasaway, Green & Harris, P.A., Tulsa, Okl., for plaintiffs-appellants.

Arthur E. Rubin, Gable & Gotwals, Tulsa, Okl., for defendant-appellee.

Before HOLLOWAY, Chief Judge, DOYLE, Circuit Judge, and BROWN*, District Judge.

WILLIAM E. DOYLE, Circuit Judge.

Plaintiffs Paul and Marsha Polin appeal from a grant of summary judgment entered in favor of defendant Dun & Bradstreet, Inc. by the United States District Court for the Northern District of Oklahoma. We affirm the district court's grant of summary judgment.

The problem here considered arose in the 1960's. During that period Paul Polin worked as a business and financial consultant as well as an insurance agent. Marsha Polin assisted her husband in the consulting business and also sold life insurance. The Polins operated under several trade names.

In response to an inquiry from the Minnehoma Financial Company in 1966, defendant prepared a credit report on Mr. Polin. This report was sent to eight businesses and detailed Polin's financial history. It listed four lawsuits filed against Polin for money due on accounts. Defendant prepared a similar report on Polin in 1968, pursuant to a request from Dallas Aero Services Company. The 1968 report, which was furnished to seven companies, contained much the same information as the 1966 report; it also listed three lawsuits pending against the Polins. The following year defendant revised its report on the Polins. At the same time it provided the new report to two businesses. The 1969 revision again listed the lawsuits pending against the Polins.

The businesses that received reports on the Polins did so pursuant to defendant's

* Wesley E. Brown, United States District Judge, District of Kansas, sitting by designation.

standard subscription agreement. The agreement provides in pertinent part:

1. All information furnished to the subscriber by Dun & Bradstreet, Inc. is for the exclusive use of the subscriber as a basis for credit, insurance, marketing and other business decisions and for no other purpose. Such information shall be held in strict confidence and shall never be reproduced, revealed or made accessible in any manner whatever to the persons reported upon or to any others. It is expressly understood that the subscriber shall neither request information for the use of others, nor permit requests to be made under this subscription by others.

Defendant never obtained the Polins' permission to investigate them, nor did defendant mail the Polins copies of the credit reports before the subscribers received them. In 1966 the Polins asked defendant to cease and desist from preparing the reports without first following the Oklahoma law on the making of credit reports. The Polins renewed their request in 1968, but defendant continued to furnish its subscribers with the reports.

In 1970 the Polins filed the instant action against defendant in the United States District Court for the Northern District of Oklahoma. Count I of their amended complaint alleged an invasion of common law and constitutional rights of privacy. Count II alleged violations of the Oklahoma Credit Ratings Act, Okla.Stat.Ann. tit. 24, §§ 81–82. The Polins sought $1,000,000 actual and $500,000 punitive damages on each count.

In 1977, at the request of the parties, the district court referred the case to a Special Master. The following year the Special Master granted defendant's motion for summary judgment on both counts, Fed.R. Civ.P. 56(c), and the district court entered judgment "in conformity with" the Special Master's order. In *Polin v. Dun & Bradstreet, Inc.*, 634 F.2d 1319 (10th Cir.1980) (en banc), we held that the district court had failed to review the Special Master's report in conformity with Fed.R.Civ.P. 53(e)(4) and remanded the case for the proper review. On remand, the district court granted defendant's motion for summary judgment, stating, "[T]he facts found by the Special Master do not as a matter of law constitute an invasion of privacy and do not as a matter of law constitute a violation of §§ 81 and 82 of the Oklahoma Credit Reporting [sic] Act that would allow any monetary recovery to the plaintiffs herein." We now review the district court's decision.

Count I of the Polins' complaint fails to present any invasion of privacy claim for which relief can be granted.

■ *First,* the Polins have failed to state a cause of action for false light invasion of privacy under Oklahoma law. Oklahoma has recognized this tort as defined by the Restatement (Second) of Torts § 652E, which provides:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*See McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737 (Okla.1980). The Restatement defines "publicity" as meaning "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D, comment a. It is clear that the element of publicity is lacking in the instant case. Defendant's 1966 credit report on the Polins was sent to eight subscribers, the 1968 report to seven subscribers, and the 1969 revision to two subscribers. The Polins admit that the foregoing are the only ones having access to the credit reports, this being a condition

of defendant's subscription agreement. Plaintiffs' Motion to Special Master to Reconsider Pre-Trial Order, June 7, 1978. Because the Polins cannot prove the element of publicity, they do not have a claim for false light invasion of privacy under Oklahoma law.

 *Second,* we accept the district court's holding that "Oklahoma law does not require a credit or financial information reporting entity to obtain the consent of an investigated party prior to distribution of reports on such party...." *Colonial Park Country Club v. Joan of Arc,* 746 F.2d 1425 (10th Cir.1984) (district court's understanding of unsettled law of its state is entitled to deference).

 *Third,* the Polins have failed to establish any constitutional right to privacy in this case. Such a constitutional right exists only against the acts of a federal or state government, *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); it does not extend to a private party such as defendant. The fact that defendant's credit reporting operations are regulated by federal and state law is not sufficient to create state action. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

 We also must conclude that Count II of the Polins' complaint fails to state any cause of action under the Oklahoma Credit Ratings Act, Okla.Stat.Ann. tit. 24, §§ 81–82,[1] for which damages may be awarded. The district court, relying on *Derryberry v. Retail Credit Co.,* 550 P.2d 942 (Okla. 1976), correctly concluded that only § 83[2] provides for monetary recovery. Because the Polins did not allege any violation of § 83, the court properly granted summary judgment to defendant.

The judgment is affirmed.

---

1. Sections 81 and 82 provide:

**§ 81. Persons furnishing ratings to request statement of assets and liabilities**

Any person, firm or corporation engaged in or purporting to furnish retail merchants the financial or credit rating of any person who is the actual or prospective customer of such retail merchant shall, before furnishing such rating, submit, either in person or by mailing to his last known postoffice address to the person whose rating is about to be reported, a request asking for a statement of the assets and liabilities of such person.

**§ 82. Copy of opinion furnished person to whom it relates**

Whenever an opinion in writing upon the financial or credit standing of any person is about to be submitted for the purpose of establishing a financial or credit rating of customers, to be used by the retail business concerns, the person, firm or corporation submitting such opinion shall first mail a copy of such opinion to the person about whom the opinion is given, at his proper postoffice address.

2. Section 83 provided:

**§ 83. False rating—Damages—Misdemeanor—Penalty**

Any person, firm or corporation who knowingly promulgates or publishes a false opinion or statement in any book or list as to the credit or financial standing of any person, and circulates such book or list among wholesale or retail business concerns, shall be liable in damages to the person about whom the false opinion or statement is made, for the full amount of injury sustained, and in addition thereto for exemplary damages in any sum to be fixed by the jury, and shall also be guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not exceeding twenty-five dollars.

This section was amended in 1984.