**Kay GRIMES, an Individual, and Traci Grimes, an Individual, Plaintiffs,**

**v.**

**CBS BROADCAST INTERNATIONAL OF CANADA, LTD, a foreign corporation, and CBS Entertainment Productions "Top Cops", a television program owned and operated by CBS Broadcast International of Canada, Ltd., Defendants.**

No. 93–C–748–H.

United States District Court, N.D. Oklahoma.

March 23, 1995.

Kevon Howald, Chadwick R. Richardson, Gary L. Richardson, Richardson & Stoops, Tulsa, OK, for Kay Grimes, Tracy Grimes.

James M. Sturdivant, John H. Rule, Kari S. McKee, Gable & Gotwals, Tulsa, OK, for CBS Broadcast International of Canada, Ltd., CBS Entertainment Productions.

**966**

## ORDER

HOLMES, District Judge.

This matter comes before the Court on a motion for summary judgment by Defendants CBS Broadcast International of Canada, Ltd. and CBS Entertainment Productions "Top Cops" (collectively, "CBS").[1]

Plaintiffs Kay and Traci Grimes brought this action against Defendants,[2] alleging that CBS invaded their privacy by placing them in a false light when it aired a feature story which appeared on the CBS television program, "Top Cops", on or about October 15, 1992. The feature story included a dramatization of the murder in 1978 of Lt. Pat Grimes, an officer in the Oklahoma Highway Patrol. Lt. Grimes was the husband and father of Plaintiffs Kay Grimes and Traci Grimes, respectively. Within that portion of the program involving Lt. Grimes, there is a segment in which actors purport to re-enact a brief telephone conversation involving Lt. Grimes, his wife, and his daughter. This approximately 40 second segment is the only portrayal of Plaintiffs by Defendants.

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Insurance Corp.*, 805 F.2d 342, 345 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987), and "the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex*, the Supreme Court stated:

"[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that par-

ty's case, and on which that party will bear the burden of proof at trial."

477 U.S. at 322, 106 S.Ct. at 2552.

A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In *Anderson*, the Supreme Court stated:

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

477 U.S. at 252, 106 S.Ct. at 2512. Thus, to defeat a summary judgment motion, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ For purposes of this motion, the Court accepts as true certain allegations by Plaintiffs which are identified herein. As a result, the facts necessary to decide this motion, as determined from the record, are not in dispute.

Defendants based the "Top Cops" feature on the true story of two convicts' escape from the Oklahoma State Penitentiary and the subsequent efforts by law enforcement in several states to apprehend them. The feature story lasts 10 minutes and 25 seconds. The story opens with the convicts' escape from prison and traces their journey through Texas to Alabama and finally back to Oklahoma, during which journey they kill nine people.

The feature then recounts a massive manhunt by Oklahoma law enforcement officials. Hoyt Hughes, the partner of Lt. Grimes, personally narrates the story. Lt. Hughes

---

1. By order dated August 1, 1994, this Court denied Defendants' first motion for summary judgment. At a December 7, 1994 scheduling conference, however, the Court invited Defendants to resubmit their motion with a copy of the videotape at issue attached as an exhibit. The Court has carefully reviewed the tape for the purpose of ruling on Defendants' instant motion.

2. Defendant CBS Broadcast International of Canada, Ltd. was the owner of Defendant CBS Entertainment Productions "Top Cops" at the time the television program containing the segment at issue aired.

and Lt. Grimes become involved with the manhunt upon learning that the escaped prisoners had returned to the state. After the convicts murder two highway patrolmen, a police helicopter tracks the escapees and radios Lts. Hughes and Grimes with their nearby location. The story depicts the tragic confrontation between the officers and the criminals: both officers and the two convicts are shot, and Lt. Grimes dies before an ambulance can reach the scene. Defendants denominated the feature story as a "memorial show" to honor law enforcement officers who have died in the line of duty, including Lt. Grimes.

The segment of the feature story in which actors portray Plaintiffs is limited to the depiction of a purported telephone call from Lt. Grimes to his wife shortly before receiving the radio call on the day of his death. The brief scene at issue consists of the following dialogue:

Lt. Grimes: Well, people keep spotting them, they're out there somewhere. I'm sure of it.

Kay Grimes: Do you think you'll get some time off for the weekend?

Lt. Grimes: No, I'm afraid we're in it for a while, Hon.

Kay Grimes: I think Tracy's really starting to miss you.

Lt. Grimes: Well, hopefully we'll have 'em by the end of the weekend. Tell her Hoyt's little one, Carrie Lynne, says "Hi".

Kay Grimes: Sweetheart, you wanna give daddy a kiss goodbye?

Tracy Grimes: Bye, daddy . . .

Lt. Grimes: Bye, darling . . .

Kay Grimes: You take care of yourself now.

Lt. Grimes: Okay, bye Hon—love ya . . .

Kay Grimes: I love you too!

The scene alternates between Lt. Grimes in a telephone booth by the side of the road, and his wife and young child in the kitchen of their home. The kitchen appears to be clean and well-furnished with white cabinets and modern appliances. Traci Grimes is eating at the kitchen table. Kay Grimes is preparing breakfast and pouring juice for her daughter while she talks to her husband on the telephone. Kay Grimes is portrayed as an attractive blonde woman in her early to mid-thirties. She is neatly dressed in a blouse and skirt. The expressions on her face are consistent with her words over the telephone, and are those of a loving wife and mother, concerned for the well-being of her family. Kay Grimes hands the receiver to her daughter to say goodbye.

■ For purposes of this motion, the Court accepts the contention of the Plaintiffs that this conversation did not occur. According to Plaintiffs, Kay Grimes' last conversation with her husband in fact resulted in an argument. Affidavit of Kay Grimes, sworn to March 23, 1994 ("Kay Grimes Aff.") ¶ 8. Plaintiffs assert that Defendants' brief portrayal of Plaintiffs placed them in a false light and that Defendants are therefore liable for emotional distress damages as well as punitive damages. *Id.* ¶¶ 7–12; Affidavit of Traci Grimes, sworn to March 23, 1994 ("Traci Grimes Aff.") ¶¶ 3, 8–10, 13.[3]

Oklahoma recognizes the invasion of privacy tort for publicity placing persons in a false light. *McCormack v. Oklahoma Publishing Co.*, 613 P.2d 737, 740 (Okl.1980). In *McCormack*, the Oklahoma Supreme Court expressly adopted this tort as set forth in the Restatement (Second) of Torts § 652E:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

---

**3.** Although Plaintiffs' sole claim in the complaint is for a false light invasion of *their own* privacy, in their objection to Defendants' motion, Plaintiffs also claim that the segment grossly misportrays the demeanor and dialect of Lt. Grimes. For purposes of this motion, the Court accepts as true Plaintiffs' contention that the portrayal of Lt. Grimes was inaccurate and offensive to his family and friends. It is settled law, however, that an action for invasion of privacy may only be maintained by a living person. Restatement (Second) of Torts § 652I cmt. b (1977) (personal character of right of privacy); *Swickard v. Wayne County Medical Examiner*, 438 Mich. 536, 475 N.W.2d 304, 309 (1991).

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.; accord Polin v. Dun & Bradstreet, Inc.,* 768 F.2d 1204, 1206 (10th Cir.1985) (applying Oklahoma law).

■ To make out a claim for false light invasion of privacy, Plaintiffs must prove that (1) Defendants gave publicity to a matter placing Plaintiffs before the public in a false light; (2) the false light would be highly offensive to reasonable persons under the circumstances; and (3) Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light. *McCormack,* 613 P.2d at 740.

In support of the instant motion, Defendants argue solely that Plaintiffs' claim should fail because they cannot satisfy the second element of the tort, namely, that no reasonable person would find the approximately 40 second segment portraying Plaintiffs as loving family members to be "highly offensive."

■ The threshold question is whether the Court may determine, as a matter of law, whether Defendants have placed Plaintiffs in a light which would be "highly offensive" to a reasonable person under the circumstances.

Oklahoma law does not specifically address this issue with respect to the false light invasion of privacy tort. Other courts, however, have answered this question by analogy to the role of the court in defamation actions. *See, e.g., Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1018 (1st Cir.) ("it is widely recognized that claims for defamation and false light have much in common") (citations omitted), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988). In Oklahoma, it is the duty of the court in libel and slander

cases to determine in the first instance whether the language used in the alleged publication is defamatory as a matter of law. *E.g., M.F. Patterson Dental Supply Co. v. Wadley,* 401 F.2d 167, 169 (10th Cir.1968) (applying Oklahoma law); *Kee v. Armstrong, Byrd & Co.,* 75 Okla. 84, 182 P. 494, 497 (1919), *overruled in part on other grounds sub nom. Dusabek v. Martz,* 121 Okla. 241, 249 P. 145 (1926); *accord* Restatement (Second) of Torts § 614(1) (1977) (court determines whether communication is capable of having a particular meaning and whether that meaning is defamatory).[4]

In *Fudge,* the court applied Restatement principles to interpret Rhode Island law and reasoned that the role of the court in false light tort actions should mirror the role of the court in defamation actions. 840 F.2d at 1018–19. The court concluded that, in a false light invasion of privacy case, it is the role of the court to "make the threshold determination of whether a statement is capable of implying the objectionable association of which the plaintiff complains." *Id.* at 1018. Based on the Oklahoma rule in libel and slander cases, the adoption by Oklahoma of the Restatement in false light cases, *see McCormack, supra,* and other authority analogizing to defamation cases to determine the proper role of the court in false light cases, this Court concludes that it may determine whether the brief portrayal of Plaintiffs in the "Top Cops" feature is "highly offensive" as a matter of law. *See, e.g., Fudge,* 840 F.2d at 1018 (applying Rhode Island law); *see also Braun v. Flynt,* 726 F.2d 245, 253 (applying Texas law), *reh'g denied,* 731 F.2d 1205 (5th Cir.), *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984); *Cibenko v. Worth Publishers, Inc.,* 510 F.Supp. 761, 766 (D.N.J.1981) (applying New Jersey law).

The Oklahoma Supreme Court has not articulated what constitutes a "highly offensive" depiction or statement in a claim for false light invasion of privacy.[5] Therefore,

---

4. Further, the Restatement recognizes that "long standing limitations" in defamation cases, such as the court's ability to evaluate the offensiveness of the statement in the first instance, should also be applied to false light claims. *See* Restatement (Second) of Torts § 652E, cmt. e (1977).

5. In *Munley v. ISC Financial House, Inc.,* 584 P.2d 1336, 1339–40 (Okl.1978), the Supreme Court discussed the "highly offensive" element with regard to two related invasion of privacy torts: intrusion upon seclusion and publicity given to private life. There, plaintiff debtor sued a

this Court must seek guidance as to the interpretation of this standard from the Restatement (Second) of Torts § 652E, adopted in *McCormack, supra*, and from other jurisdictions.

Comment c to the Restatement (Second) § 652E, which explains the "highly offensive" standard, states in its entirety as follows:

[t]he rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. Complete and perfect accuracy in published reports concerning any individual is seldom attainable by any reasonable effort, and most minor errors, such as a wrong address for his home, or a mistake in the date when he entered his employment or similar unimportant details of his career, would not in the absence of special circumstances give any serious offense to a reasonable person. *The plaintiff's privacy is not invaded when the unimportant false statements are made, even when they are made deliberately. It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.* (emphasis added).

To avoid a conflict with First Amendment rights, courts have narrowly construed the "highly offensive" standard. *See, e.g., Machleder v. Diaz*, 801 F.2d 46, 58 (2d Cir.1986). In *Dempsey v. National Enquirer, Inc.*, 687 F.Supp. 692, *reconsideration denied*, 702 F.Supp. 927 (D.Me.1988), the court considered whether portions of a newspaper article, alleged by plaintiff to be false, could, as a matter of law, be viewed as highly offensive to a reasonable person. The article included 21 paragraphs of quoted statements, ascribed to the plaintiff, which purported to recount his state of mind as he clung precariously to the door of an aircraft in flight. The court found that the "mere description of physical sensations and predictable fears which might be experienced by an individual who falls out of an airplane while in flight" would not be highly objectionable to a reasonable person. *Id.* at 694–95.

In *Fudge*, the plaintiffs, four schoolgirls, ages 8–12, alleged in relevant part that the article at issue implied that the girls were masculine in nature and wished to dominate their male schoolmates and, for that reason, their school instituted sexually segregated recesses. 840 F.2d at 1012. The court concluded that these allegations would not, as a matter of law, "be objectionable to the ordinary reasonable man under the circumstances." *Id.* at 1019.

Similarly, in *Machleder*, 801 F.2d at 56, plaintiff alleged that the broadcast portrayed him in a false light by showing him as "intemperate and evasive or as an illegal dumper of chemical wastes." The court ruled that "no reasonable juror could have concluded that the alleged portrayal was highly offensive." *Id.* at 58.[6]

In the instant case, Defendants portray Plaintiff Kay Grimes as a loving wife and mother. The purported telephone conversation suggests that she is the center of a high quality family life. The Court concludes that a reasonable person would view this portrayal as highly favorable.

---

creditor to recover damages for harassment and coercive collection practices. The Court upheld the trial court's grant of summary judgment to the creditor on grounds that defendant's conduct would not be "highly offensive to a reasonable person," adopting the Restatement standard for the "highly offensive" element of such related invasion of privacy torts. (At that time, the form of current Section 652A of the Restatement was Tentative Draft No. 22, Section 652 for actions based upon invasion of privacy.)

**6.** *See also Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1137 (7th Cir.1985), *cert. denied*, 475 U.S. 1094, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986); *Virgil v. Sports Illustrated*, 424 F.Supp. 1286, 1289 (S.D.Cal.1976); *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 441–42, 434 N.E.2d 1319, 1323, 449 N.Y.S.2d 941, 945, *reh'g denied*, 57 N.Y.2d 669, 439 N.E.2d 884, 454 N.Y.S.2d 75 (1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983).

Defendants portray Plaintiff daughter Traci Grimes as a happy, healthy, attractive, and well-cared for child. The only words attributed to her during the purported telephone conversation with her father are "Bye, daddy". The Court concludes that a reasonable person would view this portrayal of Traci Grimes as highly favorable as well.

Defendants argue that no reasonable person would be highly offended by such highly favorable portrayals. In opposition to Defendants' motion, Plaintiffs have offered no authority to support their claim that such highly favorable portrayals may nevertheless be considered "highly offensive" under applicable law. Instead, Kay Grimes offers the following factors to show that a reasonable person in her position would be highly offended by her portrayal in the "Top Cops" segment: (1) that she expressly refused to consent to the broadcast, Kay Grimes Aff. ¶¶ 4, 10; (2) that, as a result of Defendants' conduct in attempting to procure a release and her express refusal to sign the release proffered by Defendants prior to the airing of the "Top Cops" episode, her sensitivities were heightened regarding her ultimate portrayal in the segment, *id.* ¶¶ 2–6, 10; (3) that the scene portraying her never occurred, *id.* ¶ 8; and (4) that the "Top Cops" broadcast "falsely characterized [her] deceased husband by having his 'actor' use southern 'Hick' slang and having him swear repeatedly", *id.* ¶ 10.

Plaintiff Traci Grimes cites essentially the same factors as her mother: (1) that she did not consent to her portrayal in the broadcast, Traci Grimes Aff. ¶ 2; (2) that "Top Cops" never contacted her to request her consent, *id.* ¶ 12; (3) that the telephone call depicted never occurred, *id.* ¶¶ 3, 8, 13; (4) that her father was improperly portrayed as a "southern hick", "cuss[ing] repeatedly", not "in an honorable manner", and different from her memories, *id.* ¶¶ 7, 11–13; and (5) that her image of her father, who died when she was four years old, has been distorted by her viewing of the "Top Cops" segment, *id.* ¶¶ 4, 6. The Court accepts as true the above-referenced statements of Kay Grimes and Traci Grimes and has carefully considered these factors in rendering this opinion.

■ The first two factors cited by Plaintiffs involve their failure to consent to the broadcast. For a false light invasion of privacy tort, the Court must focus on the actual portrayal of Plaintiffs by Defendants. The Court concludes that, under the facts of this case, Defendants' failure to secure the consent of Plaintiffs does not convert the highly favorable portrayal into a "highly offensive" portrayal. *See, e.g., Lamonaco v. CBS Inc.,* 22 Med.L.Rptr. (BNA) 1831, 1832, 27 F.3d 557 (3d Cir. May 6, 1994) (unpublished opinion) (district court properly "shielded [defendants] from liability without regard to any person's consent or objection to the airing of the telecast").

Plaintiffs' third factor is equally unpersuasive. To satisfy the first element of the tort of *false* light invasion of privacy, Plaintiffs must prove that they were portrayed "in [a] false manner or that statements were untrue or misleading." *McCormack,* 613 P.2d at 741. The Court does not believe that, under the circumstances of this case, the fact that the telephone conversation never occurred informs the Court as to whether the portrayal of Kay Grimes or Traci Grimes is highly offensive. Finally, Plaintiffs' assertion that the false characterization of Lt. Grimes would make their portrayals highly offensive to a reasonable person is also unavailing. *See supra* text accompanying note 3.

■ In sum, using the factors cited by Plaintiffs above, they appear to argue that "[t]he tort of false light invasion of privacy seeks to recover for injury to the plaintiff's own feelings." Plaintiffs' Brief in Support of Objection to Defendants' Motion for Summary Judgment at 6. Plaintiffs contend, in effect, that the tragedy suffered by the Grimes' family in 1978 and Plaintiffs' personal anguish as a result of the content and surrounding circumstances of the "Top Cops" program should convert their portrayal by Defendants from highly favorable to "highly offensive" as a matter of law. However, to prove that statements are "highly offensive", the Restatement standard, cited by the Oklahoma Supreme Court in *Munley,* requires that "serious offense *may reasonably* be expected to be taken by a *reasonable* man in his position." Restatement (Second) of Torts

§ 652E cmt. c (emphasis added). An action for false light invasion of privacy "[cannot] be premised on mere harm to one's feelings." *Colbert v. World Publishing Co.*, 747 P.2d 286, 289–90 (Okl.1987) (citation omitted); *accord* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117, at 864 (5th ed. 1984) ("[I]t must be something that would be objectionable to the ordinary reasonable person under the circumstances, and ... the hypersensitive individual will not be protected.").

In the instant case, the entire feature is 10 minutes and 25 seconds in length. The primary actors in the story are the escaped convicts. Lt. Grimes is featured as a result of his death. Plaintiffs are in no way the focus or subject matter of the feature story. The 40 second segment in which Plaintiffs are portrayed on a telephone call does not purport to be a major representation of their "character, history, activities, or beliefs", comment c to Restatement (Second) of Torts § 652E. To the contrary, any representations of Plaintiffs are limited, and their role in the story is incidental. They apparently are depicted solely to emphasize the tragedy of Lt. Grimes' death.

This Court concludes, therefore, that a portrayal which is highly favorable, brief, and entirely incidental to a fictionalized re-enactment of events which occurred over thirteen years earlier is not "highly offensive" to a reasonable person as a matter of law under the totality of the circumstances presented in this case. Accordingly, Plaintiffs cannot maintain an action for false light invasion of privacy under applicable Oklahoma law, and Defendants' motion for summary judgment as to Plaintiffs Kay Grimes and Traci Grimes is hereby granted.

IT IS SO ORDERED.