[No. 7541–5–II. Division Two. July 31, 1986.]

EDWARD LaMON, ET AL, *Appellants,* v. THE CITY OF
WESTPORT, ET AL, *Respondents.*

*Jack L. Burtch,* for appellants.

*Steven Soha, William A. Olson,* and *Aiken, St. Louis & Siljeg,* for respondents.

REED, J.—Edward and Lorraine LaMon appeal the summary judgment dismissing their defamation and invasion of privacy claims.

On July 3, 1980, the LaMons brought this action for defamation and invasion of privacy against the City of Westport, the members of the Westport city council, and the Westport police chief, John Regan (collectively referred to herein as "the City"), based upon the action of the defendants in placing in the public library materials relating to a lawsuit by the LaMons against the police chief.

In that lawsuit, brought in federal court, the LaMons claimed that the police chief had denied them equal police protection and that he had falsely arrested and maliciously prosecuted them. The LaMons' suit against Regan was brought during a lapse in the city's insurance policy and, subsequently, the City decided to finance Regan's legal fees. Following a 1978 judgment against Regan on the equal protection claim, totaling $27,500, the Westport city council determined to finance Regan's attorney's fees on appeal and to post an appeal bond. Additionally, the city council decided to place in the public library a large file of materials from the LaMon litigation so that interested citizens could see for themselves the justification for this expenditure of municipal funds. The council contacted the LaMons so that they could include documents of their choice in the file. The LaMons, however, declined.

The file that was placed in the public library totaled 505 pages and included appellate briefs, trial memoranda and

briefs, orders, findings and conclusions of the Federal District Court; correspondence (1) between Regan and his attorney, (2) between Regan and the city council, (3) between Regan's counsel and the city council, (4) between the LaMons and the city council, (5) between the LaMons and the city attorney; trial transcripts, interrogatories and answers to interrogatories, comments on answers to interrogatories, and police investigation reports. In their response to interrogatories in this action, the LaMons identified those portions of the file they considered to be defamatory. At least 15 of the documents in the file contain allegedly defamatory matter. Because of the nature of our decision here, however, we find it unnecessary to set forth the allegedly defamatory statements.

While at the public library, the file was kept on a shelf under the checkout desk and was accessible to the public only through the librarian or her staff. In her deposition, the librarian testified that during the time the file was at the library one man asked for the file and, in front of the librarian, flipped through the pages of the file for perhaps a minute. Another man asked for the file but, upon seeing its size, said he was too busy and did not actually look through the file. The librarian stated that, other than the LaMons, she did not know of anyone else who looked at or asked to see the file. A Ms. Matteson, however, deposed that she was given the file but that she did not read any of the material in the file because she was only copying down case numbers she thought might be of interest to her daughter in her first year of law school.

In July 1980, and shortly after the filing of the complaint, Mr. LaMon filed an affidavit of prejudice against Judge Schumacher. On October 10, 1983, Mrs. LaMon filed an affidavit of prejudice against Judge Kirkwood, the only other Grays Harbor County Superior Court Judge. Judge Kirkwood promptly denied Mrs. LaMon's motion for disqualification because of Mr. LaMon's affidavit of prejudice against Judge Schumacher. On December 20, 1983, Judge

Kirkwood granted the defendants' motion for summary judgment.

■ The usual rules of summary judgment apply where a nonmedia defendant seeks summary judgment in a defamation suit for a statement about private affairs. *Dunlap v. Wayne*, 105 Wn.2d 529, 535, 716 P.2d 842 (1986). Under these rules, summary judgment is properly granted if no genuine issue of material fact exists when the evidence and all reasonable inferences from the evidence are considered in the light most favorable to the nonmoving party. CR 56(c); *Dunlap v. Wayne, supra*. We apply the usual rules of summary judgment here.[1]

A defamation plaintiff must show four essential elements: a defamatory and false statement, an unprivileged publication, fault, and damages. *Bender v. Seattle*, 99 Wn.2d 582, 599, 664 P.2d 492 (1983). Assuming arguendo that the LaMons have met their burden on the first element, but with grave doubts that they have done so,[2] we address the question of whether there is a genuine issue as to whether a publication of the alleged defamatory statements occurred.

[1]The United States Supreme Court recently decided that the summary judgment determination must be guided by the substantive evidentiary standards that apply to the particular case. *Anderson v. Liberty Lobby, Inc.,* ___ U.S. ___, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Thus, were we to hold that the LaMons are public figures, an issue we do not reach, and must show "actual malice" by *evidence of convincing clarity*, the appropriate summary judgment standard would be "whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. at 2514. As interpreted by the *Anderson* Court, then, there are no "usual rules" of summary judgment.

[2]The function of the court is to determine whether the statement is capable of defamatory meaning, and the function of the jury is to determine whether the statement was in fact defamatory. *Amsbury v. Cowles Pub'g Co.,* 76 Wn.2d 733, 738, 458 P.2d 882 (1969); Restatement (Second) of Torts § 614 (1977). Some of the alleged defamatory statements in the file are clearly incapable of defamatory meaning. For instance, the statement in the federal district court order that "[t]he [LaMons'] claims are frivolous . . ." is in no way defamatory. Other statements, for example those reporting community sentiment that the LaMons may be communists, could be considered capable of defamatory meaning, though such is less likely when the statements are taken in context.

■ First, we reject the City's contention that, if a publication occurred, that publication was absolutely privileged as being made in the course of judicial proceedings. That absolute privilege applies to allegedly defamatory statements spoken or written by a party or counsel in the course of judicial proceedings that are pertinent or material to the relief sought. *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980); Restatement (Second) of Torts §§ 586, 587 (1977). However, in this case, the placing of the file in the public library would constitute, assuming communication of its contents to a third party, a republication of statements made originally in the course of a judicial proceeding. The republication of a defamatory statement, being a separate publication, may make the second publisher liable although the original publisher is protected by a privilege. Restatement § 578, comment *b*. Any republication of the materials in the file would not be made in the course of a judicial proceeding and therefore would not be privileged. Nor do we find applicable any other privilege asserted by the City.

Any act by which the defamatory matter is intentionally or negligently communicated to a third party is a publication. Restatement § 577, comment *a*. The City contends that the Lamons have failed to identify any third party who read the file. The LaMons do not address this issue in their brief, but they argued before the trial court that, under the circumstances, publication could be inferred. The LaMons argued below, quoting *First State Bank v. Ake*, 606 S.W.2d 696, 701 (Tex. Civ. App. 1980), that "[i]f the circumstances indicated that communication to a third party is likely, however, a publication may properly be held to have occurred."

■ The circumstances here do not support the inference that a publication occurred. Were the file placed on a library rack where the public could read it without having to request it and receive it from the library staff, the inference of publication would be strong. Here, however, a person wishing to read the file, not on public display, had to request it from the library staff. The City introduced evi-

dence to show it was unlikely that anyone read the file. The one person who flipped quickly through the 505–page file cannot be deemed to have read it and to have become aware of its allegedly defamatory content. This evidence serves to rebut any inference of publication and makes it incumbent upon the LaMons to assert something more than that inference. The LaMons have not done so. Consequently, we find no issue of fact and conclude, as a matter of law, that no publication occurred.

 This conclusion that no publication occurred, dispositive of the LaMons' defamation claim, is also dispositive of their invasion of privacy claim based upon publicity that places them in a false light. By definition, false light publicity requires *publicity* of the falsehood, that is, to a substantial number of people. Restatement (Second) of Torts § 652E (1977); Restatement (Second) of Torts § 652D, comment *a*, at 384 (1977). *Cf. Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 471, 722 P.2d 1295 (1986) (applying 2–year statute of limitations to false light invasion of privacy claim). Absent any publication, there can be no publicity.

 The LaMons' invasion of privacy claim based upon an unreasonable intrusion upon their private affairs is similarly without merit. The LaMons have not explained what private affairs were intruded upon. Moreover, much of the material in the file is a matter of public record, upon which an action for intrusion into private affairs cannot lie. *See Singer v. Bell*, 613 F. Supp. 198, 204 (S.D.N.Y. 1985); Restatement (Second) of Torts § 652B, comment *c* (1977). Also, no "intrusion" occurred in the sense required by this cause of action. *See* Restatement § 652B.

We will not consider the LaMons' allegation of the tort of outrage because they did not assign error to the denial of their motion to amend their complaint to add that tort. *Transamerica Ins. Group v. United Pac. Ins. Co.*, 92 Wn.2d 21, 28, 593 P.2d 156 (1979). In any event, the evidence does not support a cause of action for outrage or intentional infliction of emotional distress.

■ The final issue before us is whether, under the facts of this case, the trial judge properly denied Mrs. LaMon's affidavit of prejudice because of Mr. LaMon's earlier affidavit of prejudice against another judge. In *LaMon v. Butler,* 44 Wn. App. 654, 722 P.2d 1373 (1986), decided this same day, we adopted the rule that spouses joined in an action may each file affidavits of prejudice, pursuant to RCW 4.12.050,[3] if each spouse has and asserts a separate cause of action. Here, unlike in *LaMon v. Butler, supra,* the alleged defamatory statements referred to both Mr. and Mrs. LaMon and therefore each has a cause of action for defamation. Nevertheless, the LaMons do not assert separate causes of action. Their complaint is framed in terms of one cause of action brought by them as husband and wife. The prayer for relief does not seek separate or differing amounts of damages for each. *See Romero v. Felter,* 83 N.M. 736, 741, 497 P.2d 738 (1972). By joining together in one cause of action for one sum of damages, the LaMons acted as one "party." Under RCW 4.12.050, they are entitled to file only one affidavit of prejudice, and the trial judge acted properly in denying their second such affidavit.

The judgment of the trial court is affirmed.

WORSWICK, C.J., and ALEXANDER, J., concur.

Reconsideration denied September 4, 1986.

Review by Supreme Court pending January 30, 1987.

---

[3]RCW 4.12.050, in pertinent part, states:

"Any party to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge . . . no party or attorney shall be permitted to make more than one such application in any action or proceeding . . ."