**Ruby Dell HARRIS, Plaintiff,**

v.

**CITY OF SEATTLE, et al., Defendants.**

**No. C02–2225P.**

United States District Court,
W.D. Washington,
at Seattle.

Feb. 26, 2004.

**1116**

---

Phillip Aaron, Seattle, WA, for plaintiff.

Roger L. Hillman and Jennifer D. Bucher, Garvey Schubert Barer, Seattle, WA, for defendants City of Seattle, VanNoy, Compton, Sherron, Sidran, Skagen, Schell, Schade, Weston, Alves, Cohen and Harris.

Gretchen Herbison and Medora A. Marisseau, Bullivant Houser Bailey, Seattle, WA, for defendants Washington Firm Ltd., Griffin, Moris and Sanders.

Bruce E.H. Johnson, Davis Wright Tremaine LLP, Seattle, WA and Diana C. Tate, Davis Wright Tremaine LLP, San Francisco, CA, for defendant King Broadcasting Company.

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL AND GRANTING THE CITY OF SEATTLE'S MOTION FOR SUMMARY JUDGMENT**

PECHMAN, District Judge.

This matter comes before the Court on Plaintiff's Motion to Compel the City of Seattle Defendants' Depositions and Production of Documents, (Dkt. No. 109) and a Motion for Summary Judgment brought by Defendant the City of Seattle, Noreen Skagen, Susan Cohen, Marilyn Sherron, Carolyn Van Noy, Jim Compton, Rachael Shade, Rose Alves, Valerie Harris, Ronda Weston, Mark Sidran, and Paul Schell (collectively "the Seattle Defendants"), (Dkt. No. 100). Having considered all of the pleadings and supporting documents, the Court DENIES Plaintiff's Motion to Compel. Plaintiff has not shown good cause why she has not pursued this discovery within the discovery period, which was over one year long. For these same reasons, the Court DENIES Plaintiff's indirect request for a Federal Rule of Civil Procedure 56(f) continuance of the summary judgment motion.

The Court GRANTS the Seattle Defendants' Motion for Summary Judgment. Plaintiff's claim for declaratory and injunctive relief relating to an alleged conflict of interest between Commissioner Skagen and a Police Department official fails because Plaintiff lacks the standing necessary to bring such a claim. Her Racketeer Influenced and Corrupt Organizations Act ("RICO") claim fails because she has not alleged any predicate acts that could give rise to a RICO claim. Her invasion of privacy and intrusion claims fail because the only such claim that she arguably brings against the Seattle Defendants is for disseminating The Washington Firm's report, which discussed her job performance. Plaintiff does not have a

reasonable and legitimate expectation of privacy in matters relating to her job performance. Her false light claim fails because she has not shown that any "publication" by any of the Seattle Defendants contained false statements of fact or were published to a substantial number of people. Her defamation claim fails because she has not identified with specificity what statements by any of the Seattle Defendants are defamatory. Her outrage and intentional infliction of emotion distress claims fail because the Seattle Defendant's conduct cannot reasonably be deemed extreme and outrageous. Her claim that The Washington Firm's investigation was unauthorized fails because it does not appear that a majority vote was required by City Ordinance to authorize the investigation, and even if it was, it does not appear that the failure to do so creates a private right of action upon which Plaintiff could base her claim. Lastly, her retaliation claim fails because she has not put forth evidence that any alleged adverse employment action taken against her was substantially motivated by her law suit against the City.

## BACKGROUND

Plaintiff Ruby Dell Harris is Secretary and Chief Examiner of the City of Seattle's ("City") Public Safety Civil Service Commission ("Commission"). The Commission administers a civil service system for the personnel of the City's police and fire departments. The Commission has three commissioners—Jim Fossos, Barbara Laners, and Defendant Noreen Skagen.

On July 3, 2000, three Commission employees, Rachael Schade, Rose Alves, and Valerie Harris, submitted a letter to Plaintiff that complained of a hostile work environment in the Commission created by other employees (Gloria Marks and Mamie Hill). In their letter, the complainants stated that Plaintiff had not taken their complaints seriously. On July 6, Plaintiff replied to the letter, stating that complainants had not substantiated their claims with specific information and dismissing their complaints as not valid.

On July 21, Commissioners Skagen and Fossos sent a letter to Assistant City Attorney Marilyn Sherron concluding that the City should request an outside investigation of the complaints brought by Schade, Alves, and Harris.[1] On August 1, Commissioner Skagen sent Plaintiff a memorandum indicating that the Commission would begin an investigation into the hostile workplace allegations. The memorandum stated that the Commission would hire an outside investigator, later identified as The Washington Firm, to conduct the investigation. It also stated that the investigator's report could include information regarding Plaintiff's "character," "reputation," or "personal characteristics." Plaintiff signed a consent to authorize such an investigation, but she did so "under protest." On August 25, Commissioner Fassos sent a letter to Skagen indicating that he voted only to approve "an investigation to find out if staff allegations about a hostile work environment were true.... I did not vote for an investigation of the conduct and responsibilities of [Plaintiff] regarding her supervision and management of staff. Any investigation pertaining to management was beyond the scope of my vote."

In late 2000, The Washington Firm conducted the investigation by interviewing various Commission employees. After initial protestations, Plaintiff eventually agreed to be interviewed with her attorney present. Plaintiff requested that The Washington Firm interview certain employees. It appears that The Washington

1. Commissioner Laners recused herself from this matter.

Firm did not interview all of the employees that Plaintiff had identified. (It is not clear from the record who Plaintiff wanted The Washington Firm to interview. Marks and Hill refused to be interviewed.) The Washington Firm issued its report on January 2, 2001. The report stated that The Washington Firm could not conclude whether there was a hostile workplace environment because the two people who were the subjects of the complaint (Marks and Hill) had refused to participate in the investigation. It went on to conclude, however, that Plaintiff had not properly handled the initial complaint.

On May 2, 2001, Compton appeared at a City Council meeting in which he discussed budget issues within the Commission, including overspending problems.

On October 3, 2001, Plaintiff filed her first complaint in this matter in state court. She named all of the Seattle Defendants except for Sidran, Schell, and Compton, who were added in September, 2002. In her first complaint, she alleged federal civil rights claims for racial discrimination as well as conspiracy, retaliation, defamation, denial of due process, and a violation of the Fair Credit Reporting Act.

In January, 2002, the City made changes to the Commission's organization and its responsibilities. The position titled "Secretary and Chief Examiner" was renamed "Executive Director." Additionally, the police and fire department applicant testing responsibilities that the Commission had been performing were transferred to a different agency within the City. Various support staff positions within the Commission were eliminated.

Plaintiff is still employed by the Commission. However, she has been on disability since January, 2003.

## ANALYSIS

### I. Plaintiff's Motion to Compel and Rule 56(f) Defense to the Seattle Defendants' Motion for Summary Judgment.

Plaintiff moves to compel depositions of the Seattle Defendants and compel the production of all documents requested by Plaintiff in subpoenas that accompanied the notices of deposition of these individuals.[2] (Dkt. No. 109). Additionally, in her opposition to the Seattle Defendant's Motion for Summary Judgment, Plaintiff indirectly moves for a continuance of the summary judgment motion under Rule 56(f). While she did not explicitly state that she moves for a continuance, she argued that the summary judgment motion should be denied pursuant to Rule 56(f) because she has not yet deposed various Seattle Defendants and witnesses.

The discovery deadline was November 24, 2003. Except for Defendants Skagen and Compton, Plaintiff noticed the depositions of all these individuals and made the request for production of documents on the last day of the discovery period. (While Plaintiff faxed these discovery requests to the City's counsel on Saturday, November 22, Saturdays are not business days. Therefore, Plaintiff effectively served these discovery requests on the following Monday, November 24.) The deposition notices proposed dates that were after the discovery cut-off date. The Court's February 5, 2003 scheduling order clearly states that the Court will only alter dates, including the discovery cut-off date, if good cause is shown, and that failure to complete discovery within the time allowed is not recognized as good cause. Plaintiff had over one year to conduct discovery in this matter. Plaintiff's discovery attempts

---

**2.** This motion was originally noted for January 16, but Plaintiff voluntarily renoted it for January 30 despite the fact that the Seattle

Defendants did not request the renoting and actually declined Plaintiff's offer for more time to respond to this motion.

were made too late. Therefore, the Court DENIES Plaintiff's motion to compel as to these nine depositions and the production of documents.

Plaintiff noticed the depositions of Defendants Skagen and Compton in June, 2003, which was well-before the discovery cut-off date. For a variety of reasons outlined in the briefing, these depositions did not occur prior to the discovery cut-off. The Seattle Defendants state in their response that they have agreed to allow these depositions to go forward even though the discovery deadline has passed since the depositions had been timely noticed. They conclude that Plaintiff's motion as to these individuals is moot. Consequently, it is not clear to the Court what the current posture of the parties is as to these two depositions. However, to the extent that Plaintiff seeks a court order compelling the Seattle Defendants to allow these depositions to go forward, the Court DENIES such a request. Plaintiff indicates that, after the initial delays that were apparently caused by counsel for the Seattle Defendants, she willingly agreed to wait to do these depositions until after the discovery deadline and after counsel had deposed her. However, it is not for the parties to agree between themselves to alter deadlines imposed by the Court. Plaintiff could have sought relief from the Court to compel these depositions well before the expiration of the discovery period. Absent Plaintiff's effort to do so, the Court will not enforce the parties separate agreement to allow discovery after the cut-off date. Therefore, the Court DENIES the motion to compel the deposition of Skagen and Compton.

Moreover, the Court denies Plaintiff's indirect request for a continuance of the summary judgment under Rule 56(f). Rule 56(f) permits a court to deny or continue a motion for summary judgment if the opposing party demonstrates through affidavit that she cannot present facts essential to her opposition and further discovery is necessary to allow the opposing party to obtain the necessary information. The opposing party bears the burden of showing that the additional evidence sought exists, and that it would prevent summary judgment. *Chance v. Pac–Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir.2001). "The mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under Rule 56(f)." *Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades District Council*, 817 F.2d 1391, 1395 (9th Cir.1987). Granting a Rule 56(f) request is particularly inappropriate when the party has failed to diligently pursue discovery throughout the course of the litigation. *Chance*, 242 F.3d at 1161 n. 6. Moreover, it is not an abuse of discretion to rule on a summary judgment motion even if there are outstanding discovery disputes when the party opposing summary judgment has not properly moved for a Rule 56(f) continuance. *Id.* at 1161 (opposing party relied on Rule 56(f) to argue against summary judgment in opposition brief but did not move for a Rule 56(f) continuance).

Plaintiff has not met her burden of showing that evidence exists that would prevent summary judgment. Not only did Plaintiff fail to take these depositions before the close of discovery, she has failed to identify what evidence she might obtain from these depositions that would prevent summary judgment. She makes vague and conclusory statements about what evidence she expects to gain from these depositions. (Plf's Resp. at 7, Aaron Dec., ¶¶ 30–33). These statements are not sufficient to warrant a continuance under Rule 56(f). Lastly, the Court notes that the Seattle Defendants' Motion for Summary Judgment was not brought at an early stage in the case. Rather, it was filed on

the dispositive motions deadline. This is not a situation in which defendants file a summary judgment motion before plaintiff has had a full opportunity to pursue discovery and obtain the evidence necessary to defeat a summary judgment motion. Thus, to the extent that Plaintiff requests a continuance under Rule 56(f), the request is DENIED.

## II. The Seattle Defendants' Motion for Summary Judgment

The Seattle Defendants seeks summary judgment on all of Plaintiff's claims against the Seattle Defendants. As a threshold matter, it is somewhat difficult to determine what causes of action Plaintiff has brought against the Seattle Defendants. Her complaint explicitly alleges seven causes of action without naming to which Defendants they applied: 1) a conflict of interest for which Plaintiff seeks declaratory judgment and injunctive relief, 2) a violation of RICO, 3) invasion of privacy, 4) intrusion, 5) false light, 6) outrage, and 7) intentional infliction of emotional distress. Throughout the complaint, Plaintiff arguably alleges additional causes of action that specifically relate to the Seattle Defendants: 1) defamation, 2) unlawfully hiring The Washington Firm to investigate Plaintiff in violation of a City Ordinance that requires a majority vote by the Commission before taking any Commission action, (Compl., ¶¶ 44–46), 3) unlawfully retaliating against Plaintiff for having filed a complaint against the City by pressuring her to resign, by transferring her responsibilities for testing police and fire department applicants to a different City department, and by increasing her clerical duties, (Id., ¶¶ 84–85, 87). Therefore, Plaintiff alleges a total of ten causes of action that arguably relate to the Seattle Defendants.

Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171,

116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

### A. Conflict of Interest Claim

■ Plaintiff seeks a declaratory judgment that Skagen's service as a Commissioner on the Commission violates the City of Seattle Code of Ethics because Skagen has an alleged conflict of interest with her son Deputy Chief Clark Kimerer of the Seattle Police Department. Plaintiff also seeks unspecified injunctive relief relating to this alleged conflict of interest.

■■ Plaintiff's declaratory relief claim fails because she lacks the requisite standing necessary to seek such relief. A declaratory relief remedy is available in cases where there is "an actual controver-

sy within [a federal court's] jurisdiction." 28 U.S.C. § 2201(a). The actual controversy requirement includes a standing requirement, which requires the plaintiff to show some threatened or actual injury resulting from the challenged conduct. *Burlington N. R.R. Co. v. Crow Tribal Council,* 940 F.2d 1239, 1243 (9th Cir.1991). Standing requires that the plaintiff have a "personal stake in the outcome of the controversy." *Western Mining Council v. Watt,* 643 F.2d 618, 623 (9th Cir.1981). Plaintiff has no standing when the alleged harm is "a generalized or abstract grievance shared by a large class of citizens." *Id.* Here, Plaintiff's complaint does not indicate how she has suffered a threatened or actual injury as a result of the alleged conflict of interest. She has failed to produce evidence that shows such an injury. Even though the Seattle Defendants specifically moved for summary judgment on this claim, Plaintiff's response did not address this claim at all. Plaintiff's grievance is more akin to a generalized grievance shared by all Seattle residents. As such, she lacks the necessary standing to seek her desired declaratory and injunctive relief.

## B. RICO Claim

■ It is unclear whether Plaintiff alleges that the City of Seattle violated RICO. The complaint states that the RICO cause of action is brought against all Defendants except the City of Seattle. (Compl., ¶ 113.) But then it goes on to allege that the City is an enterprise under RICO (Id., ¶ 114) and that all Defendants violated 18 U.S.C. § 1962(c) of RICO by depriving Plaintiff of her constitutional, statutory, and common law rights (Id., ¶¶ 115–16).

■ Assuming that Plaintiff intends her RICO claim to apply to the Seattle Defendants, such a claim fails because none of the acts the Seattle Defendants allegedly committed are predicate acts giving rise to a RICO claim. Section 1962(c) makes it illegal for any person employed by an enterprise engaged in interstate commerce to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity [ ]." Thus, Plaintiff must allege that the Seattle Defendants have conducted a pattern of racketeering activity. "Racketeering activity" includes various criminal acts defined in § 1961(1). The activities listed in § 1961(1) are commonly referred to as "predicate acts." *Sedima v. Imrex Co.,* 473 U.S. 479, 495, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiff does not identify what specific actions by any of the Defendants constitute the predicate acts. Rather, she merely alleges that the predicate acts are the allegations and facts stated within the previous twenty-four pages of her complaint. (Compl., ¶ 119.) Thus, as applicable to the Seattle Defendants, the alleged predicate acts presumably include the manner in which the City, the Commissioners, and City employees addressed the personnel issues within the Commission and the hiring of The Washington Firm to investigate whether there was a hostile work environment within the Commission. Even if those acts amounted to defamation, false light, invasion of privacy, intrusion, or outrage, none are predicate acts under RICO. All of Plaintiff's claims are civil allegations, not criminal ones of the sort contained in § 1961(1). Additionally, changing her job duties is not a predicate act. *See Reddy v. Litton Indust.,* 912 F.2d 291, 294 (9th Cir. 1990) (wrongful termination is not a predicate act under RICO). Plaintiff failed to respond to the Seattle Defendant's motion for summary judgment on this issue.

## C. Invasion of Privacy and Intrusion Claims

■ It is unclear what acts by the Seattle Defendants are alleged to have

invaded Plaintiff's privacy and intruded upon her private affairs. In her complaint, her invasion of privacy claim alleges that the "unlawful surveillance, photographing, following, and dissemination of information pertaining to Plaintiff" constitutes an invasion of her privacy. (Compl., ¶ 107). Plaintiff has not presented any evidence that any of the Seattle Defendants engaged in surveillance, photographing, or following Plaintiff. Read in light of the entire complaint, these specific allegations are directed at KING Broadcasting. Her intrusion claim merely alleged that Defendants intruded upon her private affairs and seclusion. (Compl., ¶ 109).

Plaintiff does argue, however, that the Seattle Defendants unlawfully disseminated The Washington Firm's report concerning the Plaintiff's handling of the hostile work environment complaint. Her complaint alleges that Skagen and Sherron colluded with The Washington Firm to invade her privacy, (Id., ¶ 48), but it does not specify what acts constitute the invasion of privacy. Her response to the Seattle Defendants' motion for summary judgment on this issue merely states that "[t]he acts of the Seattle defendants invaded the privacy of Plaintiff's privacy in the said action." (Plf's Resp. at 7). While she claims that these acts will be more fully shown and supported by the testimony of Skagen and Compton, as well as Margaret Pageler, and Jan Drago, she does not specify what the alleged invasive acts are, nor what evidence she expects to gain from the depositions of these individuals and how such evidence will create a material issue of fact. Therefore, as far as the Court can determine, the only invasion of privacy or intrusion claim that she might allege against the Seattle Defendants is that they wrongfully disseminated The Washington Firm's report.

■ Even if the report were disseminated as Plaintiff contends, its dissemina-

tion cannot constitute an invasion of Plaintiff's privacy or intrusion upon Plaintiff's private affairs. To support an invasion of privacy claim, the plaintiff must show that she had a legitimate and reasonable expectation of privacy in regards to the matter she claims was invaded. *Doe v. Gonzaga Univ.*, 143 Wash.2d 687, 705, 24 P.3d 390 (2001), *reversed on other grounds Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). The Washington Firm's report had to do with Plaintiff's handling of the hostile work environment complaint. Plaintiff cannot be said to have a reasonable expectation of privacy in regards to this particular aspect of her job performance. The report did not concern Plaintiff's private affairs or business. Therefore, whatever dissemination of the report that may have occurred does not constitute an invasion of Plaintiff's privacy or an intrusion upon her private affairs.

*D. False Light Claim*

■ Plaintiff alleges that the Defendants' actions placed her in a false light by attributing views and actions to Plaintiff that she does not hold and did not do. (Compl., ¶ 108). She does not specify to which Defendants this cause of action applies. The Seattle Defendants point to allegations buried elsewhere in the complaint that could arguably be said to allege the tort of false light publication against some of the Seattle Defendants. Plaintiff claims that Weston fabricated stories about Plaintiff. (Id., ¶ 25). She claims that Schell distributed The Washington Firm's report, which contained falsities, to local leaders of the African American community. (Id., ¶ 98). She claims that Compton, as well as Skagen and Sherron, disseminated The Washington Firm's report to City government generally as well as to non-government entities. (Id., ¶¶ 60–61). Lastly, she claims that Compton made false made false and defamatory state-

ments about Plaintiff at the May, 2001 televised City Council meeting, including stating that the Commission was over budget. (Id., ¶¶ 73, 80).

■ Each of these possible false light claims fail. Plaintiff has not produced any evidence that Weston's "fabricated stories" were published to a substantial number of people. False light claims require a publication of the offending material to a substantial number of people. *LaMon v. Westport*, 44 Wash.App. 664, 669, 723 P.2d 470 (1986). Plaintiff did not respond to the Seattle Defendants' argument on this point.

■ The claims against Schell, Compton, Skagen, and Sherron for disseminating the report fails because Plaintiff has not shown that the report contained false statements of fact, or that any of these Defendants actually disseminated the report to a large number of people. To allege a false light claim, the plaintiff must show that the material contained false statements of fact. Statements of opinion cannot support a defamation or false light claim. *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 893 (9th Cir.1988). Plaintiff claims that the report contained "false findings not supported by facts that Ruby Dell Harris did not take the hostile work environment allegation seriously and did not take steps to address the allegations." (Compl., ¶ 57). The statement that Plaintiff did not take the complaints seriously is not a statement of fact, but rather a conclusory opinion. Plaintiff's response to the Seattle Defendants' summary judgment motion does not point to any specific statements of fact in the report that are false. Further, Plaintiff has not provided evidence that the report was disseminated to a substantial number of people as her complaint alleged. Therefore, Plaintiff cannot sustain a claim for false light based on the alleged dissemination of this report.

Lastly, the claim against Compton for making false statements about Plaintiff during the televised City Council meeting also fails. Plaintiff has not shown that Compton's statements concerning the Commission being over budget were false. She has not pointed to any other statements made during this meeting that specifically refer to her.

### E. Defamation Claim

■ While Plaintiff's complaint does not explicitly allege a defamation cause of action, the caption of her complaint includes defamation and various statements throughout the complaint allege that the Defendants defamed Plaintiff. The same specific allegations discussed above for her false light claim could arguably be said to allege defamation against this same subset of Seattle Defendants.

To the extent that Plaintiff alleges defamation against this subset of Seattle Defendants, the claims fail because she failed to identify with the requisite specificity what statements are defamatory. Defamation claims, in particular, must be advanced with sufficient specificity. While the Ninth Circuit has not stated explicitly with what level of specificity plaintiffs must state their claims involving defamation, *Flowers v. Carville* is instructive. 310 F.3d 1118, 1130 (9th Cir.2002). In *Flowers*, the plaintiff's complaint was found to have been pled sufficiently when she "list[ed] the precise statements alleged to be false and defamatory, who made them and when." *Id.* at 1131. Plaintiff does not specify specific statements by these Defendants that were defamatory. She states that Weston "fabricated stories" without stating what the substance of those "stories" were or when they occurred. Likewise, she states that Schell, Compton, Skagen, and Sherron disseminated the Washington Firm's report,

which contained falsities, but she fails to identify any specific statements of fact in the report that are false. To the extent that she claims that Compton's statements made during the televised City Council meeting besides those having to do with the over budget problem are defamatory, those claims fail because she has not identified with specificity what those statements were.

Lastly, her claim that Compton's televised City Council meeting statements concerning the over budget problem were defamatory fails because Plaintiff has not produced any evidence that these statements were false or that they were about her.

### F. Outrage and Intentional Infliction of Emotional Distress Claims

 Outrage claims are inseparable from emotional distress claims. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1193 (9th Cir.1989), *Haubry v. Snow*, 106 Wash.App. 666, 680, 31 P.3d 1186 (2001). Therefore the Court treats these two claims as the same claim. To support an outrage or intentional infliction of emotional distress claim, a plaintiff must prove 1) that defendant's conduct was "extreme and outrageous," 2) that defendant intentionally or reckless inflicted emotional distress upon the plaintiff, and 3) that plaintiff has actually suffered a severe emotional distress as a result of defendant's conduct. *Id.* at 680, 31 P.3d 1186. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotations and citation omitted). The court should make an initial determination if reasonable minds could differ on whether the conduct was sufficiently extreme as to result in liability. *Id.*

Plaintiff has not presented any evidence that any of the Seattle Defendants worked in concert with KING Broadcasting to produce the news report. The fact that some of these Defendants may have been interviewed or contacted by KING's investigative reporter does not in and of itself support Plaintiff's outrage and intentional infliction of emotional distress claims.

Therefore, the only possible underlying act upon which her outrage and intentional infliction of emotional distress claims are based is the City's handling of the hostile workplace complaints, including hiring The Washington Firm, and its reorganization of the Commission. The Court concludes that reasonable minds could not differ in determining that hiring an outside firm to investigate a hostile workplace complaint and a manager's handling of that complaint is not conduct that is beyond all bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. The same is true regarding reorganizing a city agency that has been deemed to have internal management problems. Consequently, Plaintiff's outrage and intentional infliction of emotional distress claims against the Seattle Defendants fail.

### G. Claim that The Washington Firm's Investigation Was Not Properly Authorized

 Plaintiff claims that the hiring of The Washington Firm to investigate Plaintiff's handling of the hostile workplace complaint was unlawful because it was not authorized by a full vote of Commission as required City Ordinance. Plaintiff cites to Ordinance 107791, which she attaches to her declaration as Exhibit A. However, Exhibit A contains Ordinance 120658, which amends Seattle Municipal Code ("SMC") 4.08. Plaintiff does not cite to a specific portion of the Ordinance she at-

taches as Exhibit A, nor does she cite to a specific provision of SMC 4.08. The Court has reviewed both Exhibit A and the relevant portions of SMC 4.08, but cannot find any provision stating that all actions by the Commission require a majority vote. SMC 4.08.040 states that two commissioners constitutes a forum. However, nothing in this section refers to a majority vote requirement as a precondition for action by the Commission. Moreover, Plaintiff has not cited any provision of the SMC that a failure to comply with such a requirement creates a private right of action upon which Plaintiff may make this claim. As such, her claim that The Washington Firm's investigation was not properly authorized fails.

### H. Retaliation Claim

Plaintiff alleges that she was retaliated against for filing a complaint against the City. (Compl., ¶ 84). Because the only evidence presented by either party of such a complaint is the first complaint in this case that Plaintiff filed in state court in October, 2001, the Court presumes that this is complaint to which Plaintiff refers. According to Plaintiff, the City's retaliatory action consists of: 1) generally pressuring her to resign, 2) changing her job title, 3) transferring the police and fire department applicant testing operations that she had supervised to a different City agency, and 4) eliminating the positions of her support staff and thereby causing her to have increased clerical duties. The last three of these changes occurred in January, 2002.

 A claim for unlawful retaliation under state law is governed by RCW 49.60.210. To successfully allege a claim for unlawful retaliation, a plaintiff must prove that 1) she engaged in a protected activity, 2) an adverse employment action was taken, and 3) a causal link exists between the protected activity and the alleged retaliatory action. *Bierlein v.*

*Byrne,* 103 Wash.App. 865, 871, 14 P.3d 823 (2000). An adverse employment action includes termination, demotion, reassignment with significantly different responsibilities, or significant reduction in pay or benefits. *Id.* at 871, 14 P.3d 823. To establish the causal link, Plaintiff must show that the retaliation was a "significant factor" behind the decision to implement the adverse employment action. *Allison v. Housing Auth. of City of Seattle,* 118 Wash.2d 79, 95–96, 821 P.2d 34 (1991), *Francom v. Costco Wholesale Corp.,* 98 Wash.App. 845, 862, 991 P.2d 1182 (2000). While *Allison* rejected a strict "but for" standard, it also rejected a low "to any degree" standard for the causal link element. 118 Wash.2d at 91–95, 821 P.2d 34.

 First, Plaintiff's claim that the Seattle Defendants generally pressured her to resign because she filed the complaint cannot support a claim for retaliation because pressuring her to resign is not an adverse employment action, especially given the fact that Plaintiff did not resign. The fact that Plaintiff has taken a medical leave from her position cannot be said to constitute an adverse employment action.

 Similarly, changing her job title cannot itself be deemed an adverse employment action. Plaintiff has not presented any evidence that this change was accompanied by a decrease in pay or benefits.

 Nonetheless, the combination of transferring her responsibilities for supervising the testing process, reducing her support staff and thereby increasing her clerical duties, and changing her job title may be deemed a "reassignment with significantly different responsibilities" that could constitute an adverse employment action. However, Plaintiff has failed to establish the necessary causal link between these actions and her law suit

against the City. The Seattle Defendants present evidence that the City was considering these changes as of May 1, 2001, which is before Plaintiff filed her lawsuit in October, 2001. A May 1 letter from City Auditor Susan Cohen to the Mayor and City Councilperson Compton discusses the reasons why the City should consider reorganizing the Commission and its reassigning its testing responsibilities. (Hillman Dec. at 150–59). The letter states that a reorganization is needed because of problems that the City Auditor had identified in the management of the Commission and the Commission's failure to remedy such problems. While it is true that the letter specifically identified Plaintiff's management of the Commission as one of the numerous problems, this cannot support Plaintiff's retaliation claim. Not only had Plaintiff not yet filed her law suit against the City, this does not indicate that the motivation was connected to her later her complaints against the City. Plaintiff admits as much in her opposition when she states that the reorganization occurred because of The Washington Firm's investigation and the City Auditor's recommendation. (Pl's Resp. at 8–9).

Unlike in *Allison*, Plaintiff has presented no evidence upon which the Court could infer that Plaintiff's law suit against the City was a substantial factor that motivated the organization changes in the Commission. The sole fact that the reorganization occurred after she filed her complaint is not a sufficient basis upon which to infer that her compliant against the City was a substantial factor in the City's decision to reorganize the Commission. Therefore, Plaintiff's retaliation claim fails.

## CONCLUSION

The Court DENIES Plaintiff's Motion to Compel because she has not shown good cause why she has not pursued this discovery within the discovery period. For these same reasons, the Court DENIES Plaintiff's indirect request for a Federal Rule of Civil Procedure 56(f) continuance of the summary judgment motion.

The Court GRANTS the Seattle Defendants' Motion for Summary Judgment. Plaintiff's claim for declaratory and injunctive relief relating to an alleged conflict of interest between Commissioner Skagen and a Police Department official fails because Plaintiff lacks the standing necessary to bring such a claim. Her RICO claim fails because she has not alleged any predicate acts that could give rise to a RICO claim. Her invasion of privacy and intrusion claims fail because the only such claim that she arguably brings against the Seattle Defendants is for disseminating The Washington Firm's report, which discussed her job performance. Plaintiff does not have a reasonable and legitimate expectation of privacy in matters relating to her job performance. Her false light claim fails because she has not shown that any "publication" by any of the Seattle Defendants contained false statements of fact or were published to a substantial number of people. Her defamation claim fails because she has not identified with specificity what statements by any of the Seattle Defendants are defamatory. Her outrage and intentional infliction of emotion distress claims fail because the Seattle Defendant's conduct cannot reasonably be deemed extreme and outrageous. Her claim that The Washington Firm's investigation was unauthorized fails because it does not appear that a majority vote was required by City Ordinance to authorize the investigation, and even if it was, it does not appear that the failure to do so creates a private right of action upon which Plaintiff could base her claim. Lastly, her retaliation claim fails because she has not put forth evidence that any alleged adverse employment action taken against her was substantially motivated by her law suit against the City.

The clerk is directed to provide copies of this order to all counsel of record.